PAULINE M. E. CASSEN *vs.* ERNEST J. CASSEN.

Barnstable.  November 2, 1943. — November 29, 1943.

Present: FIELD, C.J., LUMMUS, QUA, COX, & RONAN, JJ.

*Probate Court,* Jurisdiction. *Residence. Minor. Guardian,* Of minor. *Parent and Child. Words,* "Resident," "Unfit."

Under G. L. (Ter. Ed.) c. 201, § 1, the Probate Court for a county may appoint a guardian of a minor child residing in that county, even though the child's domicil is in another State.

A finding that minor children domiciled in another State were "residents" of a county in Massachusetts within G. L. (Ter. Ed.) c. 201, § 1, was warranted on evidence that, after the children and their mother with the father's consent had spent a summer in that county as had been their custom for some years, the father brought a divorce proceeding against the mother in the other State and declined to resume friendly relations with her, as a result of which in the autumn she with the children remained in that county in a house which she owned, the children went to school there and she expected to stay there for some time.

The parents of minor children resident with the mother in Massachusetts might properly be found to be "jointly . . . unfit" to have custody of them within G. L. (Ter. Ed.) c. 201, § 5, and the mother properly might be found to be singly fit to have custody and to be awarded custody upon her appointment as their guardian by a Massachusetts Probate Court, where the father lived in Florida, and without cause had brought a divorce proceeding against the mother there, and had refused to resume marital relations.

PETITION, filed in the Probate Court for the county of Barnstable on November 30, 1942.

The case was heard by *Campbell,* J., who made no formal findings.

*R. E. French,* for the respondent.

*H. W. Williams,* for the petitioner, submitted a brief.

QUA, J.  The petitioner was, and so far as appears still is, the wife of the respondent.  The respondent appeals from a decree appointing the petitioner guardian of the two minor daughters of the parties, aged respectively about eleven years and about six years, and granting the petitioner custody of the wards.  The petition alleges that the

petitioner and the children are of Yarmouth in the county of Barnstable, and that the respondent is of Fort Myers, Florida. There is a prayer for custody. The evidence is reported.

The respondent contends that the court had no jurisdiction over the children. It is provided by G. L. (Ter. Ed.) c. 201, § 1, that the Probate Court may appoint guardians of minors "who are inhabitants of or residents in the county . . . ." We assume that the domicil of the children was in Florida, where the petition, in effect, alleges the domicil of their father to be, but nevertheless, under the statute, the Probate Court had jurisdiction to appoint a guardian over them, if they were "residents" of Barnstable County. *Martin* v. *Gardner*, 240 Mass. 350. *Glass* v. *Glass*, 260 Mass. 562, 565.

There was ample evidence to support a finding that, when the petition was filed, the children were residents of Barnstable County. A bare outline of this evidence will suffice. Ever since the marriage of the petitioner and the respondent in 1929 the family had been in the habit of spending their winters in Florida and their summers in Barnstable County. Apparently, in general, they divided the year nearly evenly between the two places, although husband and wife did not always go and come together. Following the usual custom, the petitioner, with the consent of the respondent, came to Yarmouth with the children on June 2, 1942. Seemingly the respondent did not spend that summer in Yarmouth. He was arranging to lease a hotel in Florida. But he made a short visit to Yarmouth in July, when it could be found that the relations of the parties were amicable. In September the petitioner received a letter from the respondent conveying the information that he had brought a proceeding for divorce against her in Florida. It could be found that he repulsed her attempts to ascertain the reason for his bringing this proceeding and to resume friendly relations, and that, as a consequence of his attitude, she did not return to Florida for the winter of 1942–1943; that she has since resided in Yarmouth with the children in a house which she owns; and that for some

time at least she expects to remain there. When this petition was filed the children had been living in Yarmouth about six months and were going to school there. The evidence did not require a finding that the children had been brought to this Commonwealth or kept here in bad faith for the purpose of procuring jurisdiction here or to avoid jurisdiction in Florida. On the question of residence the case is within the authority of *Martin* v. *Gardner*, 240 Mass. 350. For the meaning of "residence" see further *Marlborough* v. *Lynn*, 275 Mass. 394, 397, *Jenkins* v. *North Shore Dye House, Inc.* 277 Mass. 440, 444, *Cambridge* v. *West Springfield*, 303 Mass. 63, 67, *Russell* v. *Holland*, 309 Mass. 187, 190–191, and *Rummel* v. *Peters*, 314 Mass. 504, 511–512. This case is not like *Hersey* v. *Hersey*, 271 Mass. 545. So far as appears, no decree has been entered in Florida. The present status of the divorce proceeding there does not appear. There is no question in this case as to the effect of a decree of another State.

The respondent next calls attention to G. L. (Ter. Ed.) c. 201, § 5, which, as applicable to this case, provides that the parents of a minor ward, jointly, shall have the custody of his person and the care of his education unless the court otherwise orders, but that the court may order that the guardian shall have such custody if it "finds such parents, jointly . . . unfit to have such custody." The respondent argues that the judge could not properly find him "unfit." The meaning of "unfit" in § 5 was carefully examined in *Richards* v. *Forrest*, 278 Mass. 547. Rulings made by the trial judge in that case that in determining the issue of fitness of parents the welfare of the minor was the most important consideration, and that the petitioners were not confined to evidence showing moral or physical unfitness, were held correct (page 551). "Unfit" includes the conception of being unsuitable or ill adapted to serve under the existing circumstances (page 552), and this is to be adjudged with reference primarily to the welfare of the child (page 553). See *Bottoms* v. *Carlz*, 310 Mass. 29, 33–34. When the parents are living together in a decent home they are the natural custodians of their children, and the welfare of the children will commonly

be promoted by their joint custody. But in this case there is no common home. The petitioner lives in this Commonwealth, where the children are. The respondent lives in Florida. Under present circumstances joint custody is difficult, if not wholly impracticable. Moreover, the judge could find that the petitioner brought the children here with the consent of the respondent; that thereafter, in her absence, without fault on the part of the petitioner and without cause, he sued her for a divorce; that he tried to prevent her from returning to Florida, even for the purpose of an interview; that he avoided her when, contrary to his wishes, she took a trip to Florida in an effort to obtain an explanation from him; that he has provided no place for her and the children in Florida or elsewhere; and that he does not intend to resume marital relations. If the judge made these findings, he could come to the conclusion that the parents, "jointly," are "unfit" to have custody of the children, and that the petitioner, singly, is fit to have that custody.

We are quite aware that the case was presented in a one sided manner, due to the reliance of the respondent upon his contention of lack of jurisdiction here. We appreciate the possibility that a full presentation of both sides might change the picture. But the judge had to act upon the evidence before him. It may have seemed convincing as he heard it, as indeed it does, in general, to us upon reading it.

This result does not mean that the respondent can never see his children. That matter is still within judicial control through appropriate proceedings. See, for example, G. L. (Ter. Ed.) c. 201, § 33; *Perkins* v. *Finnegan*, 105 Mass. 501; *Harding* v. *Brown*, 227 Mass. 77, 86, 87.

*Decree affirmed.*