JOHN P. DUCLOS *vs.* BERTHA J. EDWARDS.

Worcester.    May 10, 1962. — June 12, 1962.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER,
& SPIEGEL, JJ.

*Minor. Guardian,* Of minor.    *Words,* "Unsuitable."

In determining under G. L. c. 201, § 33, as amended, whether a guardian
of a minor has become "unsuitable" for performing his trust, the char-
acter, capacity, and conduct of the guardian are not the sole matters to
be examined, but all factors must be considered in the light of the wel-
fare of the minor as the paramount consideration.    [546]

Upon a petition to a Probate Court by the father of three minor children,
a decree removing the respondent as guardian of the children was justi-
fied on findings by the judge respecting the placing of the children in
the respondent's home in Massachusetts soon after the petitioner and
his wife separated, the residence of the petitioner in that home for some
years and then, following the death of his wife and the appointment of
the respondent as guardian, the removal of the petitioner to another
State and his employment there and remarriage to a widow with chil-
dren of her own who "kept her family together," and the wish of two
of the petitioners' children, after all of them had visited him, to "live
with" him, including findings that the petitioner "is now in a position
to . . . properly care for his three children" and that "the welfare of
the children" warranted removal of the respondent as guardian so as to
enable the petitioner "to have his entire family with him in his new
home," even if one of his children "did not wish to live" in it.    [544–
546]

PETITION filed in the Probate Court for the county of
Worcester on March 17, 1961.

The case was heard by *Wahlstrom, J.*

*Philip J. Murphy* for the respondent.

*John W. Hanlon* for the petitioner.

SPIEGEL, J.    This is an appeal from a decree of the Pro-
bate Court for Worcester County removing the respondent
as guardian of the children of the petitioner.    The judge
made a report of the material facts.

The pertinent findings of the judge are herewith sum-
marized.    The petitioner, John P. Duclos, is the father of
three minor children: Jacqueline P., born on September 29,
1947; Diane M., born on August 6, 1948; and Mary Ann,

born on March 13, 1951. The mother of these children died on April 9, 1956. The parents had domestic difficulties and separated early in 1951. Soon after the parents separated and five weeks after Mary Ann was born, she was placed by the Worcester Children's Friend Society in the home of the respondent. On May 3, 1952, the petitioner placed his other two children in the same home and also "at that time he went to live in this home with his children." The petitioner was a discouraged and disturbed man. The respondent "had come to love these children and gave them as good care as she gave her own two children." In 1957, with the consent of the petitioner, the respondent was appointed guardian of the children. Early in 1961 the petitioner went to Brattleboro, Vermont, and obtained employment with the same company he had worked for in Massachusetts. He took a training course with "some assurance that within six months he would be a district manager." While in Vermont "he met a woman he had courted years before he had married." She, too, had married but her husband had died "seven years ago." She had five children and "being an energetic and intelligent . . . person . . . kept her family together." She is a "woman of marked intelligence and excellent reputation . . . who loves children." They decided to marry.

On March 17, 1961, the petitioner filed a petition in the Probate Court for the removal of the respondent as guardian of the children. "As the summer school vacation approached," the probate judge "suggested that the children spend part of this period with the . . . [petitioner] in his new home in Vermont." Two of the children were there for a time and the older two "decided they wished to live with" the petitioner. The respondent "agreed . . . [to] abide by the wishes of the children and thus was reconciled to their desire" to live with their father "but she did not agree that the youngest child," Mary Ann, should go to live with the petitioner. Mary Ann, "after spending some days with her sisters and father in the Vermont home announced, but not too strenuously, that she did not wish to live in the Vermont home."

The judge also found that the petitioner is not an unfit person; that ''he is now in a position to better his condition and that he is able to properly care for his three children and that the welfare of the children warrants . . . removing . . . [the] guardian [respondent] so as to enable the father [petitioner] to have his entire family with him in his new home.''

The only issue before us is whether the judge was justified in removing the respondent as guardian.

General Laws c. 201, § 33, as amended by St. 1956, c. 314, § 12, provides, ''If a guardian . . . becomes mentally ill or otherwise incapable of performing his trust or is unsuitable therefor, the probate court, after notice to him and to all other persons interested, may remove him. . . .''

The respondent contends that the judge was in error in ordering her removal as guardian because she could not be found ''unsuitable'' within the meaning of the statute.

Unsuitability, as that term is used in the statute, is not to be adjudged solely by an examination of the character, capacity, and conduct of the guardian, as the respondent seems to assert. All factors should be considered and ''adjudged with reference primarily to the welfare of the child.'' See *Cassen* v. *Cassen,* 315 Mass. 35, 37.

This is the paramount consideration. *Harding* v. *Brown,* 227 Mass. 77, 87. *Hersey* v. *Hersey,* 271 Mass. 545, 555. *Richards* v. *Forrest,* 278 Mass. 547, 553. *Aufiero* v. *Aufiero,* 332 Mass. 149, 153. See *Adoption of a Minor,* 343 Mass. 292, 294–295, and cases cited.

Admittedly, the order of the judge is a distressing one for the respondent and perhaps even for the child. Yet it is ''important in the long view that the child should be reared with her own next of kin and in companionship with her own'' sisters. *Stinson* v. *Meegan,* 318 Mass. 459, 465. This helps to create a normal family relationship which may well prove to be of inestimable future benefit to all of the children. We believe the judge was right in concluding that the youngest child should not be separated from her father and sisters.

*Decree affirmed.*