No. 91-145

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

IN RE THE MARRIAGE OF MELINDA K. MILLER,

     Petitioner and Appellant,

 and

TONY R. MILLER, Respondent and Respondent.

FILED

JAN 1 4 1992

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Tenth Judicial District,
In and for the county of Fergus,
The Honorable Peter L. Rapkoch, Judge presiding

COUNSEL OF RECORD:

    For Appellant:

        Jerrold L. Nye, Nye & Meyer, Billings, Montana.

    For Respondent:

        William E. Berger, Wilkins and Berger, Lewistown, Montana.

                Submitted on briefs:  December 31, 1991

                       Decided:  January 14, 1992

Filed:

Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

Following a divorce decree, the District Court for the Tenth Judicial District, Fergus County, awarded custody of Mr. and Mrs. Miller's two daughters and Mrs. Miller's son, Christopher, to Mrs. Miller. Subsequently, Mr. Miller petitioned for a change of custody of all three children to his care. The District Court granted the change of custody of all three children to Mr. Miller. Mrs. Miller appeals. We affirm in part and reverse and remand in part.

We restate the issues as follows:

1. Did the District Court err in granting custody of Tiadonna and Brandi to Mr. Miller?

2. Did the District Court err in granting custody of Christopher Harrington to Mr. Miller?

**3.** Is Mrs. Miller entitled to costs and attorney fees?

Mr. and Mrs. Miller were married in **1980.** Mrs. Miller had a son, Christopher Harrington, who was four years old at the time. The couple had two children together, Tiadonna Miller and Brandi Miller. Mr. Miller is Christopher's step-father. He never adopted Christopher. However, Christopher lived with the couple since their marriage and Mr. Miller is the only father Christopher has known.

In July **1989,** the couple were divorced. Pursuant to their signed "Property Settlement and Custody Agreement", the parties received joint custody of the children with physical custody awarded to Mrs. Miller.

On March 26, 1990, pursuant to § 41-3-301, MCA, the State of Montana, through the Department of Family Services (DFS), removed the children from Mrs. Miller's custody and transferred custody of all three children to Mr. Miller. Section 41-3-301, MCA, vests the DFS with the authority to remove a child from his or her home and place him in protective custody if there is reason to believe the child is in immediate or apparent danger of harm.

On June 25, 1990, Mr. Miller filed a motion with the District Court for change of custody of all three children. The children had been in his care since March 26, 1990. On June 27, 1990, the District Court signed an ex parte temporary restraining order giving custody of the three children to Mr. Miller and set a show cause hearing for July 16, 1990. After the show cause hearing and two additional hearings in which extensive testimony was presented by both parties, the District Court granted custody of all three children to Mr. Miller. Mrs. Miller appeals.

**I**

Did the District Court err in granting custody of Tiadonna and Brandi to Mr. Miller?

Mrs. Miller maintains that the District Court erred in transferring custody of all three children to Mr. Miller because it erroneously placed the burden on her to prove she was fit rather than on Mr. Miller to establish a basis for a change of custody pursuant to § 40-4-220, MCA. Mrs. Miller further maintains that the District Court failed to follow the appropriate statutory authority in terminating her custody of Tiadonna and Brandi. She

3

contends that the District Court failed to make findings of serious endangerment and the order to show cause violated § 40-4-220, MCA.

Mr. Miller maintains that Montana law favors continuity of custody and because of the concerns that the children would be endangered if Mrs. Miller regained custody, it would be in the children's best interest to remain with him. Mr. Miller maintains that he filed a motion for change of custody and temporary order alleging that the children would be endangered if made to return to Mrs. Miller. In response, the District Court ordered a temporary order retaining Mr. Miller as physical custodian of the children and setting July 16 as the date for a show cause hearing. The July 16 hearing was not a final hearing.

Sections 40-4-219, and 40-4-220, MCA, provide for modification of child custody if the court finds that there has been a change in circumstances **of** the child or his custodian and that the modification is necessary to serve the best interests of the child. Section 40-4-220, MCA, requires that the party seeking a modification in custody shall submit, together with his moving papers, an affidavit setting forth facts supporting the requested modification.

Those procedures were followed here. After the Department of Family Services removed the children from Mrs. Miller's custody and placed them with Mr. Miller, he filed a motion with the District Court seeking modification of the custody **of** all three children to his care. The District Court found that the parties presented extensive testimony at the hearings. The court also interviewed

4

all three children pursuant to § 40-4-214, MCA, and found that all three children desired to live with Mr. Miller.  Christopher was 14 years old at the time of the hearing.  The other two children, Tiadonna and Brandi, were under ten years old.  The court made extensive findings of fact, including:

--That an agent of the Fergus County DFS testified that it is in the best interest of all three children that Tony be granted their physical custody and that a return to Melinda would endanger their physical, educational and emotional well being.

--That Melinda has consistently been uncooperative and antagonistic and intimidating towards the children's teachers and school authorities, without cause and against the interests of the children.

--That Melinda has arbitrarily refused when help was urged, available and offered, school recommendations for very basic specialized help for Tiadonna.  That Melinda has indulged in inappropriate and uncontrollable behavior while on school grounds, and towards her children and school teachers and school authorities.

--That Melinda abuses alcohol; shortly before the hearing she was charged with Driving under the Influence and plead guilty; that she has driven the children while intoxicated; that she was a frequent customer of Bar 100 in Judith Gap often in a highly intoxicated state and was ejected from the bar and not allowed to return for one year because of her behavior.

--That Melinda has moved frequently and such moves were not in the best interests of the children.

--That Melinda has refused to allow visitation.

--That Melinda does not exhibit a stable lifestyle and living situation and there are no indications that her lifestyle will change in the future.

--That school authorities and neighbors of Tony have observed the children with Tony and find the children to be happier, more open, and more relaxed than they were while they were with Melinda.

--That since the children have been with Tony, they, especially Tiadonna, have made remarkable educational

5

progress; that Tony is attentive to and cooperative with the children's teachers and school authorities. That Tony has worked with Tiadonna in her school work, alone and in cooperation and with the assistance of her teachers and speech therapists; that the results have been most beneficial to her. Her school performance has improved greatly. Such effects have been the direct and proximate results of the help given her by and with and through Tony, which was a sharp reversal of her performance while in her mother's custody. The latter was marked by strife and confrontation and lack of stability.

--That Brandi has also profited by Tony's care, attention and assistance.

Pursuant to § 40-4-224(3), MCA, any modification of joint custody under § 40-4-219, MCA, is considered a termination of joint custody, In re Marriage of Paradis (1984), 213 Mont. 177, 689 P.2d 1263, and the appropriate standard for the District Court to apply is one of serious endangerment. In re Marriage of Gahm & Henson (1986), 222 Mont. 300, 722 P.2d 1138. Pursuant to § 40-4-219, MCA, Mr. Miller has carried his burden of proving that if the children were to remain in the custody of Mrs. Miller, their physical, mental, moral, or emotional health would be seriously endangered and the harm likely to be caused by a change of custody is outweighed by its advantages to them. See § 40-4-219(1)(c), MCA; and Commissioners' Note to § 40-4-219, MCA. When reviewing a District Court's findings regarding modification of custody, this Court will not reverse the findings unless they are clearly erroneous. In re Marriage of Arbuckle (1990), 243 Mont. 10, 792 P.2d 1123. We conclude that the record supports a finding of serious endangerment as to all three children.

We hold that the District Court's findings were not clearly

erroneous and therefore affirm the District Court's modification of the custody of Tiadonna and Brandi.

## II

Did the District Court err in granting custody of Christopher Harrington to Mr. Miller?

Mrs. Miller maintains that the District Court was without jurisdiction to award the custody of Christopher to Mr. Miller because Christopher was neither Mr. Miller's natural son, nor adopted by him.

Mr. Miller maintains that the District Court had the jurisdiction to change the custody of Christopher under § 40-4-211(4)(b), MCA, which provides that a "person other than the parent" may file a petition for custody of the child if the child is not in the physical custody of one of his parents.

Even though the finding of serious endangerment applied to Christopher, we conclude that the procedure followed in awarding custody to Mr. Miller was not appropriate where Christopher was not the natural or adopted child of Mr. Miller. We conclude a change of custody with regard to Christopher properly requires the use of the procedure contained in the child abuse, neglect and dependency statutes, § 41-3-101, et seq. In In the Matter of Doney (1977), 174 Mont. 282, 285-86, 570 P.2d 575, 577, this Court stated:

> Where a child has allegedly been abused or neglected by his natural parent, the state has a clear duty to protect the child by means of a judicial hearing to determine whether the youth is in fact abused or neglected. There are, however, few invasions by the state into the privacy of the individual that are more extreme than that of depriving a natural parent of the custody of his children. For this reason, the

7

> legislature carefully enunciated the procedures the state
> must follow and the findings which the court must make
> before custody of a child may legally be taken from his
> natural parent. A judicial hearing and finding of
> dependency and neglect . . . or judicial finding of
> willful abandonment or willful nonsupport . . . <u>are the
> exclusive means by which a natural oarent may be
> involuntarily deprived of custody of his children</u>. In
> the absence of such showing, the natural parent is
> legally entitled to the custody of his minor children.
> (Emphasis added).

Under <u>Doney</u>, and the procedure set forth in **§ 41-3-402, MCA,** in cases where a youth is abused or neglected, the county attorney or an attorney hired by the county welfare department may file a petition for temporary investigative authority. Under **§ 41-3-403, MCA,** upon the filing of that petition, the court may issue an order granting such relief as may be required for the immediate protection of the youth, and the order shall be served on the persons named in the petition, requiring that the persons appear at a show cause hearing. The court is given the power to place temporary legal custody of the youth with the Department until further order. Under **§ 41-3-404, MCA,** in the adjudicatory hearing, the court shall determine whether the youth is a youth in need of care and meets other requirements of the statute. If the court determines that the youth is an abused, neglected or dependent child, the court shall set a date for dispositional hearing to be conducted within thirty days and order any necessary investigations. Under **§ 41-3-406, MCA,** where a youth is found to be a youth in need of care under **§ 41-3-404, MCA,** the court may enter its judgment making a number of different dispositions including the following: transfer legal custody to a relative or

*8*

other individual who, after study by a social service agency designated by the court, is found by the court to be qualified to receive and care for the youth. From the facts presented in the present case, it appears that Mr. Miller may meet these requirements. However, before such a dispositional hearing order is granted, the procedures required by the child abuse, neglect and dependency sections must be followed.

In In re Custody of C.C., K.C. and B.C. (1985), 215 Mont. 72, 695 P.2d 816, this Court considered the question of whether the non-parent husband could be awarded custody of the child of his wife. In that case, determination of custody was made in the course of the request for dissolution of marriage. The court pointed out that a parent may not be deprived of custody unless there has been a finding of unfitness, abuse, or neglect. The court did not consider whether or not those findings could be made in the course of a dissolution proceeding. The Court also stated that the respondent, even though he was a non-parent, could be considered as a potential custodian. This Court then remanded the case so that the district court could make findings regarding the wishes of the children. A new trial was required in order to meet the custody determination requirements of § 40-4-212, MCA. We overrule C.C., K.C. and B.C. to the extent that it may be interpreted to hold that an award of custody may be made to a non-parent in the course of a marriage dissolution proceeding. As previously stated, under the facts in C.C., K.C. and B.C., the procedure required was set forth in the child abuse, neglect and

dependency statutes.  We recognize that the District Court in the present case may have been misled by C.C., K.C. and B.C. into following the procedure used in the present case.  We recognize the good faith effort on the part of the District Court but conclude that it is necessary to require additional procedures.

Because the procedure as to Christopher is one in which Mr. Miller as a non-parent is seeking custody, the Marriage and Divorce Act does not contain the proper procedure to be followed.  We reaffirm the Doney holding that the procedure to be used where a non-parent seeks custody is contained in the child abuse, neglect and dependency sections, § 41-3-101, et seq.  We conclude that although the District Court properly made extensive findings as to the best interests of Christopher and interviewed him as to his wishes, the District Court did not follow the appropriate statutory procedure in order to prepare the foundation for an award of custody of Christopher to Mr. Miller, the non-parent.  We hold that the District Court erred in awarding custody of Christopher to Mr. Miller.   We reverse and remand with regard to the custody determination of Christopher for further proceedings consistent with this opinion.   In view of the District Court's finding of serious endangerment as to Christopher, custody of Christopher shall remain with Mr. Miller for 30 days from the date of remittitur for further proceedings consistent with this opinion.

### III

Is Mrs. Miller entitled to costs and attorney fees?

**10**

Section 40-4-219(5), MCA, provides that attorney fees and costs shall be assessed against a party seeking modification if the court finds that the modification action is "vexatious and constitutes harassment". Mrs. Miller maintains that Mr. Miller's motion for modification of custody is vexatious and constitutes harassment because "Mr. Miller did not follow the procedure for a change of custody" as required by statute. Mr. Miller maintains that there are no facts to support her argument. We agree. The record is void of any facts to support that the modification sought is vexatious or constitutes harassment.

We hold that Mrs. Miller is not entitled to attorney fees and costs.

Affirmed in part and reversed and remanded in part.

_____
Justice

We Concur:

_____
Chief Justice

_____
_____
_____
_____
_____
Justices

11

January 14, 1992

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


Jerrold L. Nye
NYE & MEYER, P.C.
3317 Third Ave. N.
Billings, MT  59101

William Berger
Wilkins & Berger
P.O. Box 506
Lewistown, MT  59457


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
       Deputy