GUARDIANSHIP OF YUSHIKO.[1]

No. 99-P-1922.

Barnstable. June 8, 2000. - October 3, 2000.

Present: PORADA, GILLERMAN, & LAURENCE, JJ.

*Guardian. Probate Court,* Guardian. *Parent and Child,* Custody. *Minor,* Custody.

A Probate Court judge, considering a petition by a child's father to remove as guardians the child's maternal grandparents, erred in concluding without a proper determination of paternal unfitness that the best interests of the child required her to remain with her guardians; the judgment was reversed and the matter was remanded for further proceedings. [158-161]

PETITION for guardianship filed in the Barnstable Division of the Probate and Family Court Department on September 10, 1997.

A petition for removal of guardians, filed on December 11, 1998, was heard by *Robert A. Scandurra,* J.

*Herbert F. Lach, Jr.,* for the father.

*Mark D. Carchidi* for the guardians.

PORADA, J. The father appeals from a judgment of the Barnstable Probate and Family Court denying his petition to remove as guardians of his minor daughter the child's grandparents.[2] The father contends that many of the judge's findings are clearly erroneous as they are not supported by the evidence and that the judge's ultimate conclusion, that, even without a determination of parental unfitness, the best interests of the child require that the child remain with her guardians, is not supported by clear and convincing evidence. We reverse.

We summarize those findings of the judge which are uncon-

---

[1]A pseudonym.

[2]The maternal grandmother and the maternal step-grandfather are the guardians of the child. The mother of this child did not participate in the litigation. Her whereabouts are unknown.

troverted and the proceedings in this case. The father and mother of the child were married on September 17, 1995. The child was born on June 7, 1996. The father and mother separated on August 28, 1996, at which time the father left the mother with the child. At that time the father, mother, and child resided with the guardians, in whose home the child has resided ever since. A report of neglect of the child by the mother caused the Department of Social Services (department) to conduct an investigation. As a result of that investigation, in which the father did not participate, the department recommended that the maternal grandparents file a petition for guardianship of their granddaughter. Both the mother and the father assented to the allowance of the petition. The petition was granted on September 12, 1997. Although the grandparents had physical and legal custody of the child, the father did exercise his visitation rights with the child. At first, the visitation was sporadic, but for a period of many months preceding the petition for removal of the guardians, the father exercised overnight visitations every weekend. On September 20, 1998, the guardians advised the father that the step-grandfather had a job opportunity in Florida which would require him to relocate to Florida. They then discussed the father's possible relocation to Florida and changes in visitation. On September 23, 1998, the father assented to the relocation. The guardians made plans to move to Florida. Immediately before they did so, the father changed his mind about their move, apparently at the urging of his family members. On December 11, 1998, the father filed a petition for removal of the grandparents as guardians and requested a restraining order precluding the guardians from removing the child from the Commonwealth. The restraining order was denied. The guardians and child now reside in Florida where the father has been permitted to visit with his daughter.

We address first the standard applied by the judge in reaching his ultimate conclusion in this admittedly difficult case. The judge properly recognized that the dispositive issue in this case is whether the father was currently fit to further the welfare and best interests of his daughter. *Bezio* v. *Patenaude*, 381 Mass. 563, 576 (1980). *Guardianship of Clyde*, 44 Mass. App. Ct. 767, 772 (1998). Nevertheless, in deciding this issue, the judge focused chiefly on the best interests of the child. He determined that the emotional, financial, and physical stability that the guardians have provided the child, evidenced by her excellent

physical and emotional state, mandated that the child's custody remain with her guardians. He based that determination in part upon "the emotional well being and potential for emotional distress that [the child] may suffer and has exhibited to some degree during the time after visitations with the Father and his extended family, and the fact that [the child's] station in life would not be furthered by a return to live with her father." The emotional distress to which the judge referred rested on his finding that the child experienced stuttering problems and physical manifestations of emotional upset upon her return from visitation with her father and that those episodes occurred more frequently prior to the move to Florida. However, there is nothing in the evidence to suggest that the emotional distress experienced by the child after visits with her father was caused by those visits rather than the child's anxiety over the move to Florida. Nor was there evidence that the return to her father would cause the child severe emotional trauma. Cf. *Wilkins* v. *Wilkins*, 324 Mass. 261, 263 (1949). The judge's reasoning that the child's station in life would improve if she remained with her guardians is also problematic. That the guardians can do more for the child than her father or that the father's income is less than that of the guardians is of little consequence in considering what is in the child's best interests. *Richards* v. *Forrest*, 278 Mass. 547, 554 (1932). *Gordon* v. *Gordon*, 317 Mass. 471, 476 (1945). See *Custody of a Minor*, 389 Mass. 755, 765-767 (1983) ("[a] comparison of the advantage the prospective custodian may offer to the child with those that may be offered by the natural parents is inappropriate").

Of greater import, however, is the judge's failure to recognize that the best interests of the child cannot be determined separate and apart from a determination of the current fitness of the father. *Bezio* v. *Patenaude*, 381 Mass. at 576-577. "The resolution of any custody dispute involving a . . . parent necessarily begins with the premise that parents have a natural right to the custody of their children." *Guardianship of Clyde*, 44 Mass. App. Ct. at 772, quoting from *Petition of the Dept. of Pub. Welfare to Dispense with Consent to Adoption*, 383 Mass. 573, 587 (1981). See *Troxel* v. *Granville*, 120 S. Ct. 2054, 2060 (2000). That right is not absolute, for the State, as parens patriae, may interfere with that right to protect a child from serious physical or emotional harm. *Petition of the Dept. of Pub. Welfare to Dispense with Consent to Adoption*, 383 Mass. at

587-588. Thus, the judge was required to consider the fitness of the father in determining what was in the best interests of the child. *Guardianship of Clyde*, 44 Mass. App. Ct. at 773.

Here, the judge's findings regarding the fitness of the father are conflicting. On the one hand, he specifically states that he is "not rendering a determination that the Father is unfit" and, on the other hand, implicitly suggests that the father is unfit when he finds that, "[a]lthough the Father may not be considered to be unfit under other circumstances, given the present state of the facts, it is in the best interests of [the child] that she remain in the physical custody and under the Guardianship of the Guardians." To the extent that the latter may constitute a conclusion of unfitness, it appears not to be supported by judge's findings. Those findings consist of a showing of some lack of interest or involvement by the father in the child's life; the father's assent to the guardianship and expressed contentment with the visitation arrangement; and the fact that the father cannot offer the child a better life than the guardians presently can.

The mere fact that the father has on occasion shown some lack of interest or involvement in the child's life clearly does not rise to the level of disinterest, abandonment, or inattentiveness which demonstrates parental unfitness. See *Guardianship of a Minor*, 19 Mass. App. Ct. 333, 337 (1985). Nor is there anything in the judge's findings to support a conclusion that the father is incompetent, indifferent, abusive, or incapable of performing parental obligations which would warrant a finding of unfitness. *Richards* v. *Forrest*, 278 Mass. at 552-553. *Guardianship of a Minor*, 19 Mass. App. Ct. at 336. Likewise, the fact that the father assented to the guardianship and expressed contentment with the visitation arrangement is of no significance since a parent's ability or interest to parent in the past and/or assent to a guardianship does not dictate the parent's current fitness. See *Duclos* v. *Edwards*, 344 Mass. 544, 545-546 (1962); *Bezio* v. *Patenaude*, 381 Mass. at 577. Finally, the comparison of the life the father can offer his child with the "better life" the guardians can provide is inappropriate, for it does not clearly recognize the father's presumptive right to raise his child. See *Custody of a Minor*, 389 Mass. at 767. *Guardianship of Clyde*, 44 Mass. App. Ct. at 772. In sum, none of those findings are sufficient to demonstrate clearly and convincingly that the father is currently unfit to further the best interests of his child.

The father also argues that many of the judge's findings are

not supported by the evidence. Because we are of the opinion that the judgment must be reversed in this case, we need not dwell on this argument. We simply note that our review of the evidence discloses that the father's contention rests principally on the judge's interpretation of the evidence rather than on the lack of evidence to support most of his findings.

The father also requests counsel fees in this case. The father has not advanced any reason which, in our opinion, justifies an award of counsel fees.

In sum, although we recognize that the guardians have at all times acted in the best interests of the child and the return of the child to her father will prove difficult, we are of the opinion that the judge's findings do not clearly and convincingly demonstrate the father's unfitness to further the best interests of his child. We are, thus, constrained to reverse the judgment.

Accordingly, the judgment is reversed, and the action is remanded to the Probate and Family Court for a determination of visitation rights to be afforded the guardians as the grandparents of the child. G. L. c. 119, § 39D.

*So ordered.*