2002 SD 13

**In the Matter of the GUARDIANSHIP AND CONSERVATORSHIP FOR T.H.M. and M.M.M., Minor Children.**

**No. 21635.**

Supreme Court of South Dakota.

Argued Oct. 3, 2001.

Decided Jan. 30, 2002.

Rehearing Denied March 14, 2002.

Sandy J. Steffen of Johnson, Eklund, Nicholson, Peterson & Fox, Gregory, for appellee, children.

Stanley E. Whiting, Winner, for appellee, grandmother.

Neil Carsrud, Dakota Plains Legal Services, Mission, for appellant, mother.

GILBERTSON, Chief Justice.

[¶ 1.] Melanie Regalado (Grandmother) brought Guardianship proceedings to gain custody of T.H.M. and M.M.M., minor children of Ardith Perry (Mother), on grounds of abuse and neglect. The trial court determined the children to be abused and neglected, determined Mother to be unfit, terminated Mother's custodial rights, and granted custody to Grandmother. Mother appeals on grounds that the guardianship proceeding was not the proper means in which to transfer the custodial rights of a parent to a non-parent where abuse and neglect was the basis for the transfer and that Mother was denied her constitutional right to procedural due process. We affirm as to the creation of a guardianship, but reverse and remand as to the determination of abuse and neglect and transfer of custody.

**FACTS AND PROCEDURE**

[¶ 2.] T.H.M. and M.M.M. are the natural children of Michael M. and Mother. Michael was the eldest son of Grandmother. T.H.M. was born September 16, 1993. M.M.M. was born May 23, 1995.[1]

[¶ 3.] Michael and Mother were married in February of 1994 and spent a significant amount of time between the years of 1993 and 1997 living in Grandmother's home, in both Colorado and California. After Michael committed suicide on December 21, 1997, Mother allowed the children to have extended visits with Grandmother in California. When this action began, the children had been staying with Grandmother for five months, with Mother's permission.

[¶ 4.] Grandmother commenced proceedings pursuant to the South Dakota Guardianship Act, SDCL chapter 29A–5, on November 29, 1999, alleging it would be in the best interests of the children if she were appointed guardian and conservator for T.H.M. and M.M.M. Mother filed a motion for summary judgment. Grandmother responded by moving to amend her application to allege the children were abused and neglected and Mother was unfit. Grandmother's motion was granted. Mother then filed a motion to dismiss on grounds that guardianship proceedings

1. Mother also has two other children: D.M., born February 6, 1997, and W.P., born January 29, 1999. D.M. was born during the marriage of Michael and Mother and was acknowledged by Michael as his child even though Michael was not the natural father.

were not the proper means to involuntarily transfer custody from a parent to a non-parent. Mother asserted that the proceedings should be held pursuant to SDCL chapters 26–7A (Juvenile Court) and 26–8A (Protection of Children from Abuse or Neglect). Mother also filed a writ of habeas corpus, alleging her children were being illegally held from her custody. The trial court denied Mother's motion to dismiss, dismissed the writ of habeas corpus, and entered an order for interim custody in favor of Grandmother based upon the best interests of the child standard.

[¶ 5.] In response to Mother's objection to telephonic testimony of the out-of-state witnesses and an *ex parte* motion filed by the children's court appointed attorney, the trial court also entered an order authorizing travel expenses so that the attorney could travel to California to take depositions. Mother's own requests for a court appointed attorney and authorization for travel expenses were denied.[2] The children's attorney deposed nine witnesses in California on May 15, 2000. Mother was financially unable to attend or participate in these depositions. Copies of the depositions were provided to Mother on the first day of trial and, over the objections of Mother's attorney, were admitted into evidence the following day.

[¶ 6.] Mother's attorney also filed a motion to dismiss on grounds that SDCL 29A–5–203, the guardianship provision, un-constitutionally infringed upon Mother's Fourteenth Amendment due process rights to the "care, custody, and control" of her children. The trial court, however, refused to rule on the motion. The court concluded, as a matter of law, that Mother was unfit,[3] that compelling reasons existed to separate T.H.M. and M.M.M. from their half-siblings, and that it was in the best interests of the children to transfer custody to Grandmother. Mother appeals, raising the following issues:

1. Whether a guardianship proceeding commenced by a non-parent and based upon allegations of abuse and neglect is a proper proceeding to terminate the custodial rights of a natural parent.

2. Whether Mother was deprived of her constitutional right to procedural due process when the trial court allowed a non-parent to use the South Dakota Guardianship Act to involuntarily terminate her custodial rights.

## STANDARD OF REVIEW

[¶ 7.] This case involves a matter of statutory interpretation. It is well settled that "[s]tatutory interpretation presents a question of law reviewable de novo." *Zoss v. Schaefers*, 1999 SD 105, ¶ 6, 598 N.W.2d 550, 552 (citing *Satellite Cable Srvs. v. Northern Electric*, 1998 SD

---

2. Court appointed counsel was not granted to Mother until after this appeal was filed. Mother filed an order to show cause with this Court and because of the important issue presented herein, this Court issued an order of remand requiring the trial court to appoint counsel.

3. The trial court also made findings of fact that the children were abused and neglected, using language set forth in SDCL 26–8A–2(2), (3) and (4). These findings of fact are incorporated into the trial court's order appointing guardian and conservator where the court states:

> [t]he Court further having considered ... the extent to which the children have been neglected in the home of the natural mother, ... ha[s] found the appointment of Melanie Regalado as Guardian and Conservator of the minor children is necessary because of the natural mother's unfitness ... and is further necessary to protect the minor children from neglect or abuse, and there are no less restrictive alternatives....

67, ¶ 5, 581 N.W.2d 478, 480). This Court need only construe a statute if the plain meaning of the statute is ambiguous. Our rules of statutory construction are as follows:

> The purpose of statutory construction is to discover the true intention of the law, which is to be ascertained primarily from the language expressed in the statute. The intent of a statute is determined from what the legislature said, rather than what the courts think it should have said, and the court must confine itself to the language used. Words and phrases in a statute must be given their plain meaning and effect. When the language in a statute is clear, certain, and unambiguous, there is no reason for construction, and the Court's only function is to declare the meaning of the statute as clearly expressed.

*Martinmaas v. Engelmann*, 2000 SD 85, ¶ 49, 612 N.W.2d 600, 611 (quoting *Moss v. Guttormson*, 1996 SD 76, ¶ 10, 551 N.W.2d 14, 17) (additional citations omitted). In a case where two statutes touch upon the same subject matter, there is a presumption that the Legislature intended the two to coexist and that it "did not intend an absurd or unreasonable result." *Id.* Therefore, the statute with more specific language "relating to a particular subject will prevail over the general terms of another statute." *Id.*

## ANALYSIS AND DECISION

[¶ 8.] **1. Whether a guardianship proceeding commenced by a nonparent and based upon allegations of abuse and neglect is a proper proceeding to terminate the custodial rights of a natural parent.**

[¶ 9.] Proceedings instituted under the South Dakota Guardianship Act, set forth in SDCL chapter 29A–5, are not the proper means of transferring custody from a parent to a non-parent without a prior determination of a parent's unfitness. *See Blow v. Lottman*, 75 S.D. 127, 59 N.W.2d 825 (1953) (holding mother's disqualification as custodian is prerequisite to award of custody to any other person) *overruled on other grounds by* Matter of Termination of Parental Rights of P.A.M., 505 N.W.2d 395 (S.D.1993). When allegations of abuse and neglect serve as the basis for such a determination, the action becomes an adjudication of abuse and neglect. SDCL 29A–5–106 provides:

> Nothing in this chapter affects the provisions of chapters 26–7A, 26–8A, 26–8B and 26–8C relating to the appointment of guardians and conservators and the administration of guardianships and conservatorships for children who have been adjudicated to be delinquent, abused, neglected, or in need of supervision.... *In the event of any inconsistency or conflict, the provisions of chapters 26–7A, 26–8A, and 26–8C or of Title 27A shall control,* and the provisions of this chapter are in all respects to be supplementary thereto.

(emphasis added). Thus, where allegations of abuse and neglect serve as the grounds for the guardianship petition, as was the case here, the statutory provisions specifically relating to abuse and neglect proceedings, as well as the provisions relating to juvenile court, must control. *See Martinmaas*, 2000 SD 85 at ¶ 49, 612 N.W.2d at 611.

[¶ 10.] Adjudication of abuse or neglect is done in juvenile court pursuant to SDCL chapters 26–7A and 26–8A. SDCL 26–7A–2 provides for exclusive jurisdiction of the juvenile court as to dependent or neglected children. These chapters were enacted for the particular purpose of "establish[ing] an effective state and local system for the protection of children from abuse or neglect." SDCL 26–8A–1. In so doing, the

law requires that these statutes be liberally construed in favor of the child, the parents, and the state. SDCL 26-7A-6. The numerous constitutional safeguards embedded within chapters 26-7A and 26-8A also afford substantial protection. Similar provisions cannot be found in the more general Guardianship Act.

[¶ 11.] The Department of Social Services (DSS) cannot be bypassed when custody is being involuntarily taken from a natural parent in favor of a non-parent. *See* SDCL 26-8A-27; *Matter of Z.Z.*, 494 N.W.2d 608, 610 (S.D.1992) (holding custody and guardianship of child whose natural parent is adjudicated unfit mandatorily vests with social services). Abuse and neglect allegations trigger the State's interest, as *parens patriae*, in protecting the welfare of the child. SDCL 26-8A-1. *See also Matter of N.J.W., N.G.B., and K.F.B.*, 273 N.W.2d 134, 137 (S.D.1978) (holding State, as *parens patriae*, takes strong interest in care and treatment of children within its borders). The State is the only party that may seek to involuntarily deprive a parent of custody and place the custody of the child with a non-parent

when abuse and neglect is the contested issue.[4] The Legislature has delegated the State's authority to DSS, an agency uniquely qualified in this area. SDCL 26-8A-8; 9. The trial court usurped this role when it allowed Grandmother to by-pass mandatory custody proceedings by using the more general guardianship provisions. *See People ex rel. H.O.*, 2001 SD 114, ¶ 9, 633 N.W.2d 603, 605.

▮ [¶ 12.] Grandmother asserts that the guardianship procedure was proper because it did not involve the final "termination" of parental rights. She argues, instead, that it was merely a custody proceeding, with modifiable results, and therefore need not comply with chapters 26-7A or 26-8A.[5] Grandmother misses the point. The revocation of custodial rights is not another party's self-help proposition, no matter how sincere their intentions. The facts of this case necessitate a particular type of proceeding, an abuse and neglect determination, before a guardian who is vested with custody of the children may be appointed.[6] The trial court used language from the abuse and neglect statutes, essentially adjudicating the children abused

---

4. Grandmother cites *Crouse v. Crouse*, 552 N.W.2d 413, 418 (S.D.1996), for support of the proposition that a private party may bring an action in guardianship proceedings to involuntary deprive a parent of custody. Grandmother's reliance is misplaced. Our decision in that case simply pointed out two means by which a non-parent may gain custody of a child. *Id.* It did not, however, sanction the involuntary revocation of custody from a natural parent by a third party in guardianship proceedings. We cited *In re Marriage of Miller*, 251 Mont. 300, 825 P.2d 189 (1992), which held where a child is not the natural or adopted child of the person seeking custody, the procedure to be used was in the child abuse, neglect and dependency sections. We agree with the *Miller* decision and further emphasize its holding today.

5. While legally correct that this is not a termination case, a guardianship in this case would

have some factual similarities with a termination of parental rights. If Grandmother, as guardian, takes the children with her back to California, Mother's destitute economic status would in reality terminate contact with the children, except possibly for any letters or an occasional phone call.

6. The dissent portrays this case as a choice between placing the children in the stable home of Grandmother or returning them to the deplorable conditions from which Grandmother removed them. Not so. The reality is that DSS or the courts will determine what is in the best interests of *all four* children and, it is a possibility that, T.H.M. and M.M.M. will remain with Grandmother. But because of the interests at stake, it is all the more important to follow the proper statutory mandates, thus ensuring the constitutional protection of the children and the parent.

and neglected. Yet, two children, who lived in the same conditions, remain with Mother. This adjudication should be done in juvenile court, pursuant to the abuse and neglect statutes, so that such an oversight may be avoided. One of the remedies under an abuse and neglect determination is the appointment of a guardian pursuant to SDCL 26–8A–22. There is simply no justification for Grandmother's end-run around the proper statutory procedures.

[¶ 13.] **2. Whether Mother was deprived of her constitutional right to procedural due process when the trial court allowed a non-parent to use the South Dakota Guardianship Act to involuntarily terminate her custodial rights.**

[¶ 14.] The use of the Guardianship Act in this case to effect a change of custody is not merely a procedural flaw. SDCL chapters 26–7A and 26–8A exist for the protection of the children, the parents and the family unit. Because these chapters deal with the fundamental right of parents to the care, custody, and control of their children, they employ multiple constitutional safeguards that are not present in the Guardianship Act. *See Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (holding care, custody and control of children is a fundamental right); *Lassiter v. Dept. of Social Services*, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981) (holding parents' custodial rights are a fundamental interest guaranteed due process protection). These safeguards cannot be brushed aside by those seeking custody, by the attorneys, or by the trial court when the requirements simply become inconvenient or burdensome.

[¶ 15.] While the Guardianship Act merely provides for notice and an opportunity to be heard, proceedings under the abuse and neglect statutes are much more rigorous. For example, the protective sections that are at issue in this case include: (1) SDCL 26–7A–30, providing the parent be advised of her constitutional rights, including the right to a court appointed attorney; (2) SDCL 26–7A–34, providing for separate adjudicatory and dispositional hearings; (3) SDCL 26–7A–39, providing for compulsory process for the attendance of witnesses; (4) SDCL 26–7A–57–81, providing for discovery, especially the requirements for the manner and scope of examination, as well as the right of the parent to be present at the examination; (5) SDCL 26–7A–82, placing an elevated "clear and convincing" burden of proof upon the party alleging abuse and neglect instead of a preponderance burden in a guardianship proceeding; (6) SDCL 26–7A–83, providing the party who prepares reports or material to be admitted at trial shall be present at trial as a witness for examination and cross-examination; and (7) SDCL 26–8A–21, providing reasonable efforts be made to eliminate the need for removal and to return the child after removal. Clearly, by allowing the custody action to proceed under the Guardianship Act, the trial court deprived Mother, and her children, of all of these constitutional safeguards.

## CONCLUSION

[¶ 16.] The record of this case, together with the trial court's findings of fact, at a minimum raise a serious question as to the treatment of these children by Mother. For the reasons set forth above, we reverse and remand to the trial court with directions to modify and limit its grant of guardianship to that of a guardian ad litem with those powers defined in SDCL 15–6–17(c) and 34–12C–2. We further direct the trial court to order DSS to intervene in this action pursuant to its statutory duty

under SDCL 26–8A–9, pending an adjudication of the abuse and neglect allegations.

[¶ 17.] AMUNDSON, Justice, and GORS, Acting Justice, concur.

[¶ 18.] SABERS and KONENKAMP, Justices, dissent.

SABERS, Justice (dissenting).

[¶ 19.] I dissent.

[¶ 20.] I would affirm the guardianship (of the persons) and the conservatorship (of the estates) of T.H.M. and M.M.M. and remand solely for the purpose of determining their physical custody under the direction and control of the Department of Social Services.

KONENKAMP, Justice (dissenting).

[¶ 21.] This is a case where, had it not been for a loving grandmother, two children might not have survived; certainly, they would not be in the safe and healthy place they are today. These children endured almost unimaginable misery. Addiction, disease, suicide, filth, and abuse— that was their portion. In desperation, the grandmother several times sought help for them from the South Dakota Department of Social Services. In the end, the Department declined to proceed. Then the grandmother sought guardianship. The matter went to trial. Finding the mother unfit and the children abused and neglected, the circuit court awarded the grandmother custody under the South Dakota Guardianship and Conservatorship Act. Through their attorney, both children now urge us to allow them to remain in their grandmother's guardianship and custody. It is not difficult to understand why. What is difficult to understand is this Court's order nullifying the guardianship.

[¶ 22.] In this appeal, the mother argues that her case should have been handled in juvenile court through the depen-

dency process, by the very officials who earlier declined involvement and with whom she refused to cooperate. The majority of this Court agrees. It quashes the custodial guardianship and orders that the Department of Social Services take over the case. It remains to be seen how the Department will proceed now, when it decided not to proceed before. This is not to fault the Department. Perhaps it never became aware of all the particulars we now have. But the fact remains that, were it not for the grandmother, these children would be without hope.

[¶ 23.] To reach its decision, the majority curtails the provisions of our guardianship laws, departs from our longstanding precedent, and joins a tiny minority of jurisdictions that hold that child custody cannot be decided in guardianship proceedings. Nearly all courts, from New York to California and most in between, hold that guardianships can be used to obtain custody. Why should South Dakota not be among these jurisdictions, especially when our Legislature intended it so?

A.

Lives of Misery

[¶ 24.] The trial court's findings of fact in this case remain wholly undisputed. Although the majority hardly alludes to them, these facts have a decided bearing on how we should view this case. This is a story of a state agency declining to proceed and a courageous family member stepping up for the sake of the family's children. The parents met while both were attending the Job Corps in Nemo, South Dakota. They eventually had three children together, two of whom are involved here, one born on September 16, 1993, and the other, on May 23, 1995. These parents lived addicted, degraded

lives, lives their children were condemned to share.

[¶ 25.] Brief excerpts from the trial court's extensive findings suffice to describe just how squalid these children's surroundings were. Both parents were to blame. There were frequent all-night drinking binges and extended absences from the children. At times, twelve to fifteen people lived in their small quarters, with no functional plumbing. On one occasion, the grandmother observed one of the children left only in dirty diapers and lying on a bare cement floor, amid rat feces and trash piled high all about. There was no food available but a baby bottle containing soda pop.

[¶ 26.] The children sometimes got by on scraps picked up from the floor. They had no oral or bodily hygiene. They had no childhood immunizations. They suffered from scabies, malnutrition, and rotting teeth. One child's teeth were so severely decayed, and her gums so filled with sores, that only extensive oral surgery would help her. When the Department of Social Services offered the mother parenting classes, vaccinations for the children, and transportation for dental care, she refused. She claimed this was harassment. With the mother's lack of cooperation, and her refusal to allow social workers inside her apartment, the Department declined further action. Even so, the facts are uncontradicted that the children were psychologically maladapted, seriously undernourished, and evinced unmistakable signs that they had been sexually molested. All this was later confirmed by experts who examined them.

[¶ 27.] The father committed suicide on December 21, 1997. After this, though hard to imagine, the children's situation became worse. The mother and her boyfriend used cruel pranks, stories of imaginary monsters, to torment the children. The boyfriend hung little nooses for the children to see, a heartless reminder of their father's death. Their filthy apartment was infested with fleas, rodents, and cockroaches. The grandmother, who had given intermittent extended care for the children over the years, came to South Dakota from her home in California. She had a mission. Indeed, she was the children's last hope. She and the children pleaded with the mother to let them go back to California and live there. Mercifully, the mother acceded in allowing these two children to go with the grandmother in July 1999.[7]

[¶ 28.] In California, they received needed dental care, immunizations, psychological counseling, and surgery to repair one child's heart defect. The mother had known of the heart problem but ignored it. Then the grandmother sought guardianship. Even when this matter was about to go to court, the mother did not cooperate in having a home study done. Nonetheless, she admitted that after the father died, she failed to provide for the children and was unfit.

### B.

### Guardianship and Custody

[¶ 29.] Our guardianship laws were rewritten in 1993, creating the new South Dakota Guardianship and Conservatorship Act. This Act did not purport to change our earlier precedents on nonparental custody placements. On the contrary, the parental preference statute previously in

---

7. The mother has four children. The oldest and the youngest still live with her. The youngest child has a different father than the children involved in this guardianship. I certainly agree with the majority that these two remaining children should be referred to the South Dakota Department of Social Services.

our guardianship laws was repealed. *See* SDCL 30–27–23 (repealed 1993). This does not mean that there is no presumptive preference for fit parents. The natural parent-child relationship is a constitutionally protected fundamental right. *See Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 1394, 71 L.Ed.2d 599 (1982). However, as we have said in several cases, when the parents are shown to be unfit or there are extraordinary circumstances reflecting on parental fitness and serious detriment to the child, custody may be transferred to a nonparent, apart from dependency proceedings.

[¶ 30.] SDCL 29A–5–203 provides:

[A] petition for the appointment of a guardian, a conservator, or both, may be filed by ... an interested relative, by the individual or facility that is responsible for or has assumed responsibility for the minor's care or custody, by the individual or anyone the minor has nominated as guardian or conservator, or by any other interested person, including the department of human services or the department of social services.

Obviously, the grandmother is an "interested relative" who "has assumed responsibility for the [children's] care or custody," and thus she is qualified to petition for conservatorship and guardianship.

[¶ 31.] Nothing has changed our position articulated in *Langerman v. Langerman:*

Before a parent's right to custody over his or her own children will be disturbed in favor of a nonparent a clear showing against the parent of "gross misconduct or unfitness, or other extraordinary circumstance affecting the welfare of the child" is required, and an award cannot be made to [nonparents] simply because they may be better custodians.

336 N.W.2d 669, 670 (S.D.1983). *See Cooper v. Merkel*, 470 N.W.2d 253, 255 (S.D. 1991). As we said in *Crouse v. Crouse*, 552 N.W.2d 413, 418 (S.D.1996), two statutory avenues are available for nonparents to obtain custody in South Dakota, one through the abuse and neglect laws, SDCL ch. 26–8A, and the other through the Guardianship and Conservatorship Act, SDCL ch. 29A–5. The grandmother availed herself of that Act, and we should uphold her right to do so. Here, the circuit court found the mother unfit, opening the door for an interested relative to take custody. In *Langerman*, this Court upheld a grant of custody to the grandparents after a finding that the father was unfit because of his alcohol abuse and his unstable living arrangements. None of these cases have ever been overruled.

[¶ 32.] Surely, the majority misconstrues SDCL 29A–5–106 in holding that it requires this matter to be decided in juvenile court. All that statute provides is that with respect "to the appointment of guardians and conservators and the administration of guardianships and conservatorships for children who have been *adjudicated* ... abused, neglected," the abuse and neglect statutes shall control if there is any inconsistency. (Emphasis added.) The children here were not adjudicated abused and neglected under the abuse and neglect statutes. In fact, just the opposite, the State never brought a case for abuse and neglect. Our guardianship laws specifically permit courts to consider the "extent to which it is necessary to protect the minor from neglect, exploitation, or abuse...." SDCL 29A–5–208. Will all guardianship cases where there is evidence of neglect or abuse now be diverted to the Department of Social Services?

[¶ 33.] It would be a different matter if the State had initiated its own petition under the abuse and neglect statutes. Then, obviously, that proceeding would take priority. On point is *Guardianship*

*of Z.Z.*, 494 N.W.2d 608, 610 (S.D.1992), a case the majority relies on to support its position. There, the child had already been adjudicated abused and neglected in juvenile court when the grandparents sought to bypass the juvenile court by bringing a guardianship action for custody. *See also People ex rel. H.O.*, 2001 SD 114, 633 N.W.2d 603 (ongoing abuse and neglect action cannot be circumvented). That is not what happened in this case. Here, in a guardianship proceeding, not an abuse and neglect proceeding, the circuit court found that the mother was unfit and that the children suffered abuse and neglect. No reference in the court's decision was even made to the abuse and neglect statutes.

[¶ 34.] Most states allow for the award of custody to a nonparent in guardianship proceedings. Legislatures in these states, like our own Legislature, recognize that it would place an overwhelming burden on social service agencies to take responsibility for all nonparental custody placements. When family members and others come to court seeking guardianship with allegations of parental unfitness, permanent or temporary, courts are empowered to remove custody from the unfit parent for such time as is necessary to provide for the child's needs. Unlike abuse and neglect proceedings in juvenile court, where terminations of parental rights often result, a guardianship can end any time the court is satisfied that the circumstances giving rise to the guardianship no longer exist. SDCL 29A–5–506. Hence, the panoply of rights attendant on dependency proceedings is not required.

[¶ 35.] In the interest of space, only a sampling of cases will be cited to demonstrate that the majority of courts allow this type of proceeding, upon a showing of parental unfitness. *See, e.g., In re Guardianship of D.A. McW.*, 460 So.2d 368 (Fla.

1984); *In re Guardianship of Williams*, 254 Kan. 814, 869 P.2d 661 (1994); *In re Guardianship of M.R.S.*, 960 P.2d 357 (Okl.1998); *Fuss v. Niceforo*, 244 A.D.2d 858, 665 N.Y.S.2d 781 (N.Y.A.D.1997); *Matter of Guardianship of R.B.*, 619 N.E.2d 952 (Ind.Ct.App.1993); *In re Guardianship of Jenna G.*, 63 Cal.App.4th 387, 74 Cal.Rptr.2d 47 (1998); *In re Guardianship of Yushiko*, 50 Mass.App.Ct. 157, 735 N.E.2d 1260 (2000).

[¶ 36.] South Dakota's Guardianship and Conservatorship Act enables a court to consider "the suitability of the proposed guardian or conservator, the minor's current or proposed living arrangements ... the availability of less restrictive alternatives, the extent to which it is necessary to protect the minor from *neglect, exploitation, or abuse,* and if applicable, the minor's need for habilitation or therapeutic treatment." SDCL 29A–5–208 (emphasis added). Guardians appointed for minors under this act "shall be responsible for making decisions regarding the minor's support, care, health, education, and, if not inconsistent with an order of commitment or custody, to take custody of the minor and to determine the minor's residence." SDCL 29A–5–401. In deciding guardianship issues, a court must consider "the wishes of the minor if the minor is of sufficient age to form an intelligent preference." SDCL 29A–5–202.

### C.

### Mother's Constitutional Rights

[¶ 37.] Contrary to the majority's conclusion, the mother suffered no deprivation of her due process rights. The circuit court wisely applied the higher constitutional burden, clear and convincing evidence, in concluding that the mother is presently unfit and that the children are in need of a guardian. As one California appellate court recognized in comparing

guardianship actions with dependency proceedings:

> In several other respects the creation of a guardianship under California law offers fewer protections for parental interests than dependency proceedings or proceedings to terminate parental rights. In contrast to dependency and termination proceedings, the laws governing guardianship petitions make no provision for appointing counsel for a parent. (See Prob.Code, § 1470; compare Welf. & Inst.Code, § 317; Fam. Code, § 7862.) Moreover, dependency and termination proceedings are almost invariably instituted by officers of the state, who may be expected to have made some neutral assessment prior to initiating litigation. A guardianship petition, in contrast, may be filed by any "relative or other person" claiming to act "on behalf of the minor." (Prob. Code, § 1510, subd.(a).) No representative of the state, or other arguably neutral party, participates in the decision to institute proceedings. Nor is there any mandatory equivalent of the numerous investigations and reviews undertaken by child welfare authorities in dependency cases. (Footnotes omitted.) [8]

*Guardianship of Stephen G.*, 40 Cal. App.4th 1418, 1429–30, 47 Cal.Rptr.2d 409, 417 (1995). Despite the "fewer protections" available to a parent in guardianship proceedings, California courts uphold guardianships to nonparents. *See, e.g. Guardianship of Diana B.*, 30 Cal.App.4th 1766, 36 Cal.Rptr.2d 447 (1994).

[¶ 38.] Lastly, the mother complains that some of the evidence was offered by deposition, in violation of her constitutional rights. Incorrect! This is a civil action. Depositions are routinely used in civil trials. The mother and her attorney refused to cooperate in making any accommodation for telephonic depositions, so the mother could participate in them. She gambled that these depositions would later be disallowed on constitutional grounds. Because she had no basis for failing to cooperate, she cannot now complain that the depositions were improperly admitted at trial.

### D.

### Conclusion

[¶ 39.] Guardianship is a longstanding and widely used method of shifting custody of children, especially within families. Into this relatively uncomplicated process, the Court today injects the ponderous apparatus of dependency law, with its "reasonable efforts," foster care placements, and broad array of constitutional mandates. To do so, the Court ignores our precedents, misconstrues our statutes, and sides against the overwhelming trend in this country to the contrary. Were it not for the terrible suffering these children have already endured, perhaps this ruling would be less difficult to accept. But this decision is wrong. Our State should not join the minority. Our Legislature did not intend this. These children do not deserve this. I dissent.

---

**8.** Note the similarity of language between South Dakota's and California's guardianship statutes.