*1996 SD 95*

**Stephanie R. CROUSE, Plaintiff and Appellee,**

v.

**Matthew CROUSE, Defendant and Appellant.**

**No. 19168.**

Supreme Court of South Dakota.

Considered on Briefs Feb. 14, 1996.

Decided July 31, 1996.

John A. Gors of DeVany & Gors, Vermillion, for plaintiff and appellee.

Robert C. Ulrich, Vermillion, for defendant and appellant.

KONENKAMP, Justice.

[¶ 1] In a divorce action involving the custody of three children, the trial court found the husband was not the father of the oldest boy and granted custody to the mother. The

court also awarded her the parties' two biological children pursuant to the rule which restricts splitting half-siblings. The husband appeals asserting the court never considered the best interests of the children. We affirm in part, reverse in part and remand.

## Facts

[¶ 2] Stephanie and Matthew Crouse were married in Carroll, Iowa on September 10, 1990. In January 1993, they separated and Stephanie filed for divorce. In her complaint she alleged Matthew was not the father of the oldest child, Tyler, born on March 2, 1990, six months before their marriage. Two other children were born during the marriage, but there is no dispute Matthew is their biological father. When the parties reconciled the divorce was not pursued. Stephanie brought a second divorce action on January 5, 1994 and within a month took the three children from their home in Iowa to Vermillion, South Dakota. In April, Stephanie informally relinquished custody of all three children to Matthew. They resided with him in Carroll, Iowa until March 31, 1995 when the trial court awarded their custody to Stephanie.

[¶ 3] We need not discuss all the specifics of what one witness described as a "toxic" relationship between these parties. Both had a history of substance abuse and emotional problems. Their frequent arguments sometimes culminated in physical altercations. Stephanie received an assault conviction for striking Matthew. Matthew assaulted Stephanie a number of times, once breaking her nose. Also, he was convicted for physically abusing Tyler when he was six months old.

[¶ 4] At trial, Matthew testified he believed he was Tyler's biological father and always treated him as his son. According to Matthew, the first time Stephanie told him he was not Tyler's father was in December 1992, a month before the first divorce filing. Stephanie testified, however, Matthew could not have reasonably believed he was the father, because she first met him at a New Year's Eve dance on January 1, 1990, when she was seven months pregnant. Although Tyler's birth certificate initially listed no one as the father, the parties later made arrangements under Iowa law to have it amended to show Matthew as the father. In view of this dispute, the court ordered paternity blood testing which conclusively established Matthew was not Tyler's biological father.

[¶ 5] The trial court found: (1) Matthew, not being the father, had no custodial rights to Tyler; (2) Matthew always knew he was not Tyler's father; (3) Stephanie was not an unfit parent, nor were there extraordinary circumstances affecting the children's welfare; (4) no compelling reasons justified separating the siblings; and therefore (5) custody of all three children should be awarded to Stephanie. The court made no findings on the best interests of the children. On appeal Matthew contends the trial court erred in awarding Tyler's custody to his mother and in not considering the children's best interests.

## Standard of Review

[¶ 6] Trial courts exercise broad discretion in child custody disputes; their decisions will not be disturbed absent a clear showing of an abuse of discretion. *In re Janke*, 500 N.W.2d 207, 211 (S.D.1993); *Anderson v. Anderson*, 472 N.W.2d 519, 520 (S.D.1991). Findings of fact will not be set aside unless clearly erroneous and due regard will be given to the trial court's ability to judge the credibility of witnesses. *In re Janke*, 500 N.W.2d at 211; *Anderson*, 472 N.W.2d at 520. Mixed questions of law and fact, which require us to apply a legal standard are reviewable *de novo*. *Phipps Bros., Inc. v. Nelson's Oil & Gas, Inc.*, 508 N.W.2d 885, 888 (S.D.1993); *In re Hendrickson's Health Care Serv.*, 462 N.W.2d 655, 656 (S.D. 1990).

## Analysis

### [¶ 7] Birth Certificate—Presumption of Paternity

[¶ 8] After the parties signed a petition to amend the birth certificate to declare Matthew's paternity and no one challenged it within three years, Matthew believes Tyler's paternity became fixed under Iowa law. Stephanie does not dispute that Iowa law controls this question. The Iowa statute provides:

Upon request and receipt of a *sworn acknowledgment of paternity of a child born out of wedlock, signed by both parents,* the state registrar shall amend a certificate of birth to show paternity if paternity is not shown on the birth certificate. Upon written request of the parents, the surname of the child may be changed on the certificate to that of the father....

Iowa Code Ann § 144.40 (West 1981)(before 1993 and 1994 amendments)(emphasis added).

[¶ 9] Was an irrebuttable presumption of paternity established upon the passage of three years from the date the birth certificate was amended, prohibiting any action in South Dakota to challenge it? In 1993, the pertinent law in effect stated:

> 7. a. Notwithstanding section 598.21 subsection 8, paragraph 'k', the establishment of paternity by court order, *including a court order based on an administrative establishment of paternity, or by affidavit,* may be overcome if all of the following conditions are met:
>
>     *     *     *     *     *     *
>
> (4) The action to overcome paternity is filed no later than three years after the establishment of paternity.

Iowa Code Ann § 600B.41 (West 1993)(before 1994 amendment)(emphasis added). The underlined language was added in 1993, but in 1994 the Iowa Legislature repealed all of section 7. Matthew apparently relies upon the "or by affidavit" language (which was only in the statute for one year) to support his position that paternity was irrevocably settled when three years elapsed from the time he alleges the birth certificate was amended. The record is unclear, however, when the birth certificate was amended.

[¶ 10] Matthew states he arranged to have his name added as the father approximately five weeks after Tyler was born (April 1990), whereas Stephanie recalled it was nine months to a year after the parties were married (July–September 1991). No one offered a copy of the document the parties signed to amend the birth certificate; the certificate itself does not reflect the date of any amendment; and the trial court made no findings on the question. Nonetheless, the portion of the statute Matthew relies upon was not in effect at the time he claims the certificate was amended nor when this matter was tried. Thus, we conclude Matthew has failed to conclusively establish his paternity under Iowa law. Absent the presumption, can his acknowledgment of fatherhood carry any legal import?

[¶ 11] The trial court found that Matthew and Stephanie first met on January 1, 1990, when Stephanie was seven months pregnant with Tyler. Matthew disputed this, but we must defer to the findings unless they are clearly erroneous. *See In re Janke,* 500 N.W.2d at 211; *Anderson,* 472 N.W.2d at 520. We can only reflect that the finding is supported by competent evidence; therefore, we uphold the court's inference Matthew knew he could not be Tyler's father at the time the birth certificate was amended.

[¶ 12] Matthew's acknowledgment of paternity contravenes Iowa law in which a parent is defined as a "father or mother of a child, whether by birth or adoption." Iowa Code Ann § 600A.2 (West 1981 & Supp 1995). He is neither a parent by birth nor adoption and thus his acknowledgment is invalid. A false acknowledgment of fatherhood on a birth certificate will not establish paternity, even if the mother agreed to it—a mother "lacks legal authority to unilaterally make an unrelated man the father of her child. Adoption of a child may only be accomplished under the adoption statute." *Petition of Bruce,* 522 N.W.2d 67, 72 (Iowa 1994)(*citing In re Marriage of Holcomb,* 471 N.W.2d 76, 78 (Iowa App.1991)); *In re Marriage of Halvorsen,* 521 N.W.2d 725, 728 (Iowa 1994). *But see In re Marriage of Gallagher,* 539 N.W.2d 479 (Iowa 1995)(equitable parent doctrine recognized where child was born during marriage and husband reasonably believed he was the father). Under the circumstances of this case, Matthew's name on Tyler's birth certificate affords him no parental rights, as it was overcome by proof he was not the biological father.

### [¶ 13] Paternity by Equitable Estoppel

[¶ 14] Can Stephanie be estopped from challenging paternity? Whether equi-

table estoppel will deny Stephanie the right to contest Matthew's paternity is fully reviewable as a mixed question of law and fact. *Phipps Bros., Inc.*, 508 N.W.2d at 888; *In re Hendrickson's*, 462 N.W.2d at 656. Only one case in South Dakota examined the principles of equitable estoppel in a dispute between a parent and a stepparent. *See* E.H. v. M.H., 512 N.W.2d 148, 151 (S.D.1994)(stepparent had no duty to provide child support for minor stepchildren after divorce). The principle has been defined in other types of cases.

> In order to constitute equitable estoppel, false representations or concealment of material facts must exist, the party to whom it was made must have been without knowledge of the real facts, the representations or concealment must have been made with the intention that it should be acted upon, and the party to whom it was made must have relied thereon to his prejudice or injury. There can be no estoppel if any of these essential elements are lacking, or if any of them have not been proved by clear and convincing evidence. *Heupel v. Imprimis Technology, Inc.*, 473 N.W.2d 464, 466 (S.D.1991); *L.R. Foy Const. v. SD State Cement Plant Comm'n.*, 399 N.W.2d 340, 344 (SD 1987); *Taylor v. Tripp*, 330 N.W.2d 542, 545 (S.D.1983).

*Century 21 Associated Realty v. Hoffman*, 503 N.W.2d 861, 866 (S.D.1993). Essential to equitable estoppel is the presence of fraud, false representations, or concealment of material facts. *See Valley Bank v. Dowdy*, 337 N.W.2d 164 (S.D.1983); *Taylor v. Tripp*, 330 N.W.2d 542 (S.D.1983); *Spitzer v. Spitzer*, 84 S.D. 147, 168 N.W.2d 718 (1969); and *Cromwell v. Hosbrook*, 81 S.D. 324, 134 N.W.2d 777 (1965).

[¶ 15] Matthew argues Stephanie should be estopped because she agreed to change the birth certificate to register Matthew as the father and she received Aid to Dependent Children benefits after claiming Matthew was the father. The circuit court found Matthew knew he was not Tyler's biological father. With this finding, we must conclude Matthew acquiesced in the very conduct which he now complains justifies estoppel. He cannot profess a concealment or false representation of material facts of which he was aware, nor can he claim reliance upon such falsehoods to his prejudice. "To maintain estoppel, there must have been an act or conduct by the party to be estopped which induces reliance by another to his or her detriment, thus creating a condition that would make it inequitable to allow the guilty party to claim what would otherwise be his or her legal rights." *E.H.*, 512 N.W.2d at 149–50. *Cf. Gallagher*, 539 N.W.2d at 479 (child born during marriage and husband reasonably believed he was the father).

[¶ 16] Matthew's estoppel theory is not founded solely upon Stephanie's public declaration of Matthew's paternity, but it also arises from his purported reliance on her conduct in authorizing and encouraging the development of a father-son relationship, leading him to believe she would not enforce her superior right to custody. Some courts have found this reasoning convincing. *See e.g.*, *Boyles v. Boyles*, 95 A.D.2d 95, 466 N.Y.S.2d 762 (1983); *see generally* Allan Stephens, Annotation, *Parental Rights of Man Who is Not Biological or Adoptive Father of Child but Was Husband or Cohabitant of Mother When Child Was Conceived or Born*, 84 ALR4th 655 (1991). If we adopted this expansive rationale, almost any stepparent could acquire parenthood by estoppel. This theory violates traditional equitable estoppel principles and might deter parents from encouraging a close relationship between their children and stepparents. *See E.H.*, 512 N.W.2d at 151 (similar argument rejected in support context; to adopt this rationale we would be "discouraging stepparents from establishing close and loving relationships with the stepchildren...."). In summary, the principles of equitable estoppel will not apply in this case to allow Matthew to claim Tyler's custody.

### [¶ 17] Custody Dispute Between Parent and Stepparent

[¶ 18] In the trial court's decision, Stephanie's award of Tyler's custody turned solely on her fitness. The court found "[c]lear and satisfactory evidence does not exist to show that [she] is an unfit parent." In 1993, our Legislature repealed SDCL 30–27–23, entitling a parent to a preference in

custody proceedings. Matthew believes the repeal of this statute ordains a pure best interests standard for determining custody disputes between parents and nonparents. *See also* Michael B. Thompson, *Child Custody Disputes Between Parents and Non–Parents: A Plea for the Abrogation of the Parental–Right Doctrine in South Dakota,* 34 SDLRev 534 (1989). In custody disputes arising out of divorces, the applicable statute is SDCL 25-4-45:

> In an action for divorce, the court may, before or after judgment, give such direction for the custody, care, and education of the *children of the marriage* as may seem necessary or proper, and may at any time vacate or modify the same. In awarding the custody of a child, the court shall be guided by consideration of what appears to be for the best interests of the child in respect to the child's temporal and mental and moral welfare. If the child is of a sufficient age to form an intelligent preference, the court may consider that preference in determining the question *As between parents adversely claiming the custody, neither parent may be given preference over the other in determining custody.* (Emphasis added).

A plain reading of this language makes it clear stepchildren are not "children of the marriage." The last sentence in the statute refers to disputes between parents; no mention is made of nonparents. We acknowledge a split of authority on this question, but adhere to the reasoning of those courts which hold "children of the marriage" refers to children either born to or adopted by the married parties. *See e.g., Perry v. Superior Court of Kern County,* 108 Cal.App.3d 480, 166 Cal.Rptr. 583 (1980), *superceded by* statute as stated in *In re Marriage of Goetz and Lewis,* 203 Cal.App.3d 514, 250 Cal.Rptr. 30, 31 (1988); *contra, Carter v. Brodrick,* 644 P.2d 850 (Alaska 1982). If our lawmakers intended to confer standing upon nonparents to seek custody in divorce proceedings, they could have easily done so. Witness the Legislature's decision to require stepparents to support stepchildren during the marriage. SDCL 25-7-8; 25-7A-1(13). In contrast, the Uniform Marriage and Divorce Act § 401(d) permits nonparents to initiate custo-

dy proceedings, if the child is not in the custody of a parent. 9A UnifLAnn 194 (1979). The only statutory avenues available for nonparents to obtain custody in South Dakota are through the Abuse and Neglect laws, SDCL ch 26–8A, or under the Guardianship and Conservatorship Act, SDCL ch 29A–5. *See In re Marriage of Miller,* 251 Mont. 300, 825 P.2d 189 (1992)(where child was not natural or adopted child of the person seeking custody, the procedure to be used was in child abuse, neglect and dependency sections, not under divorce act).

[¶ 19] Having failed to achieve parental status either in equity or under Iowa law, Matthew had no legal basis in this divorce proceeding to obtain Tyler's custody. We uphold the trial court's ruling denying custody of Tyler to Matthew.

### [¶ 20] Best Interests and the Rule Against Splitting Siblings

[¶ 21] Upon award of Tyler's custody to Stephanie, the trial court inferred the rule against splitting siblings automatically meant she gained custody of the other two children without any consideration of their best interests. In *Mayer v. Mayer,* 397 N.W.2d 638, 642 (S.D.1986) this Court wrote "[i]t is universally recognized that in the absence of compelling reasons to the contrary, the best interest of siblings require that they be raised together whenever possible." (footnote omitted). The rule is also applicable to half-siblings. *Id.* at 644. Yet, as between parents, child custody awards cannot be accomplished absent a finding concerning their best interests.

> Our chief concern with the theory advanced by the [mother] is that it requires no consideration of the children's best interests: should the chancellor find that the natural parent of one step-sibling is not unfit and that exceptional circumstances are not present, he must, under the [mother's] formulation, grant custody of all the children to that parent, without considering whether their best interests would be better served by granting custody to the other parent. The [mother's] theory is thus in conflict both with [the statute] which mandates that custody be awarded

"solely in accordance with the welfare and best interests of the children," and with the well-settled principle that, in child custody determinations, the best interests of the child is the paramount concern.

*Riddle v. Riddle,* 28 Ark.App. 344, 775 S.W.2d 513, 517 (1989) (citations omitted). Keeping siblings together is a splendid aspiration, but it cannot override the controlling question of their best interests. SDCL 25–4–45 ("In awarding the custody of a child, the court shall be guided by consideration of what appears to be for the best interests of the child in respect to the child's temporal and mental and moral welfare.") Family unity between siblings often promotes their best interests, but it is not divisible from those interests. *See In re Davis,* 502 Pa. 110, 465 A.2d 614, 621 (1983)(rule against splitting siblings cannot be elevated above all other factors, but must be weighed in conjunction with them). In deciding custody, the court must determine the two younger children's best interests along with the question whether those interests may be thwarted if they are separated from Tyler. Neither side raises issues concerning visitation with the three children.

[¶ 22] We affirm in part, reverse in part and remand to the trial court for further findings consistent with this opinion.

[¶ 23] MILLER, C.J., and SABERS, AMUNDSON and GILBERTSON, JJ., concur.