#25340-a-JKM

**2010 SD 47**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA, EX REL.,
CARMEN E. WERNKE,                                  Plaintiff and Appellee,

v.

JORGE B. CORTEZ,                                    Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT
OF THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

HONORABLE GENE PAUL KEAN
Judge

* * * *

MARTY J. JACKLEY
Attorney General

CHRIS MCCLURE
Special Assistant Attorney General          Attorneys for plaintiff
Pierre, South Dakota                        and appellee.

RICHARD L. JOHNSON                          Attorney for defendant
Sioux Falls, South Dakota                   and appellant.

* * * *

CONSIDERED ON BRIEFS
ON APRIL 26, 2010

OPINION FILED **06/16/10**

#25340

MEIERHENRY, Justice

[¶1.]     Jorge Cortez appeals from a circuit court order requiring him to pay

child support to Carmen Wernke for two children, J.A.W. and J.W.C.  Cortez

attempted to challenge paternity to J.A.W. even though he signed an affidavit in

1999 attesting he was J.A.W.'s father.  The circuit court denied Cortez's motion on

the basis that the paternity challenge was not timely under SDCL 25-8-59.  We

affirm.

[¶2.]     Wernke is the biological mother of both children.  Cortez is J.W.C.'s

biological father but not J.A.W.'s biological father.  Even though Cortez knew he

was not J.A.W.'s biological father, Cortez signed a paternity affidavit in April 1999

claiming he was J.A.W.'s father.  The affidavit declared that "I Jorge Cortez,

acknowledge that I am the natural father of J.A.W., born the 19 day of December,

1997 at Sioux Falls, Minnehaha County, State of South Dakota to Carmen Edinia

Wernke."  The issue on appeal is whether Cortez's signature on J.A.W.'s paternity

affidavit created a rebuttable presumption of paternity within the meaning of SDCL

25-8-52 and SDCL 25-8-59.[1]

[¶3.]     Under SDCL 25-8-52, "[a] signed and notarized affidavit of paternity

creates a rebuttable presumption of paternity" that "allows the Department of

Social Services . . . to establish a support obligation . . . without requiring any

---

1.    Cortez claims he only signed the paternity affidavit "in order to prevent
      J.A.W. from being taken from his mother's custody."  Cortez contends that
      Wernke's mother had threatened to pursue guardianship of J.A.W. if Wernke
      were a single parent.  Cortez apparently believed that if he assumed
      paternity of J.A.W., Wernke's mother would yield in her pursuit for
      guardianship of J.A.W.

further proceedings to establish paternity." SDCL 25-8-59 provides that "[a]ny action contesting a rebuttable presumption of paternity as established by [SDCL 25-8-52] . . . shall be commenced in circuit court either sixty days after the creation of the presumption of paternity" or within three years if "fraud, duress, or material mistake of fact" are alleged.

[¶4.] Cortez concedes that if a rebuttable presumption of paternity was created by signing the affidavit, he would be barred from challenging his paternity of J.A.W. because he failed to bring an action within sixty days of signing the affidavit as required by SDCL 25-8-52.[2] Cortez, however, claims that the rationale set forth in *Crouse v. Crouse,* 1996 SD 95, 552 NW2d 413, should apply rather than SDCL 25-8-52. We disagree.

[¶5.] The rationale in *Crouse* does not apply because it did not involve a presumption of paternity. It also did not involve the application of SDCL 25-8-52 and SDCL 25-8-59 or similar statutes. *Crouse* involved the application of Iowa law to the question whether placing the husband's name on the non-biological child's birth certificate afforded the husband parental rights to custody in a divorce action. We specifically determined that there was neither a presumption of paternity under Iowa law at the time the birth certificate "was amended nor when [the] matter was tried." 1996 SD 95, ¶10, 552 NW2d at 416. Without the presumption, Iowa law gave the husband no parental rights. Likewise, equitable estoppel did not apply. *Id.* ¶16. Consequently, we cannot glean from *Crouse* how a presumption of paternity may have affected the rationale or outcome of the case. Additionally,

---

2. Cortez makes no claim of fraud, duress, or material mistake of fact.

*Crouse* was decided prior to our opinion in *In re Support Obligation of Do Rego*, 2001 SD 1, 620 NW2d 770 (applying SDCL 25-8-59). *See* Dep't of Soc. Servs. v. Byer, 2005 SD 37, 694 NW2d 705 (declining to address the constitutionality of SDCL 25-8-59); Chapman v. Chapman, 2006 SD 36, ¶¶20, 29-31, 713 NW2d 572, 578, 580 (applying SDCL 25-8-59 to bar father from contesting paternity and declining to address the constitutionality of SDCL 25-8-59 on other grounds). These cases have recognized and applied the statutory presumption of paternity as defined in SDCL 25-8-52 and the time limits to challenge a presumption set forth in SDCL 25-8-59. These prior cases serve as precedent in this case.

[¶6.] Because the holding of *Crouse* is inapplicable under the facts of this case, Cortez's affidavit of paternity created a rebuttable presumption under SDCL 25-8-52 that barred his challenge under SDCL 25-8-59 nine years after paternity was acknowledged. Thus, Cortez is obligated to pay child support for J.A.W.

[¶7.] Affirmed.

[¶8.] GILBERTSON, Chief Justice and KONENKAMP and ZINTER, Justices, and SABERS, Retired Justice, concur.

[¶9.] SABERS, Retired Justice, sitting for SEVERSON, Justice, disqualified.