#26222-rev & rem-SLZ

**2012 S.D. 74**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

BRADLEY C. DEBOER,                        Plaintiff and Appellee,

    v.

TARA D. DEBOER,                           Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIFTH JUDICIAL CIRCUIT
ROBERTS COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JON S. FLEMMER
Judge

* * * *

CHAD C. NELSON
Milbank, South Dakota                     Attorney for plaintiff
                                          and appellee.


THOMAS L. SANNES
DAVID A. GEYER of
Delaney, Nielsen & Sannes, PC
Webster, South Dakota                     Attorneys for defendant
                                          and appellant.

* * * *

CONSIDERED ON BRIEFS
ON AUGUST 27, 2012

OPINION FILED **10/24/12**

#26222

ZINTER, Justice

[¶1.]    Bradley DeBoer sued Tara DeBoer for divorce.  Tara counterclaimed for custody and support of a child she had from a prior relationship.  The circuit court granted Tara custody of the child, but denied Tara's request for child support.  Tara appeals.  She argues that a duty of support arose under Texas presumption of paternity statutes.  We agree that a duty of support arose under the Texas statutes, and we reverse.

*Facts and Procedural History*

[¶2.]    Tara DeBoer, formerly Tara Koliba, resided in San Antonio, Texas.  On July 13, 2003, she gave birth to a son, Taiton Koliba.  Tara only knew Taiton's biological father by his first name, and Tara did not identify a father on Taiton's Texas birth certificate.

[¶3.]    Tara met Bradley DeBoer in December 2004.  They married shortly thereafter.  Tara and Taiton moved to rural Corona, South Dakota, to live with Bradley and his son (Caleb DeBoer).  Caleb was Bradley's son from a prior marriage.

[¶4.]    In January 2006, Bradley executed a will.  In his will, Bradley indicated that he had two children: "Caleb DeBoer" and "Taiton DeBoer."  Two weeks later, Bradley and Tara decided to change Taiton's last name from "Koliba" to "DeBoer."  Because they thought it was too expensive, they did not utilize an attorney to assist them.  Instead, they decided to execute a Texas "Application for New Birth Certificate Based on Parentage."

-1-

[¶5.] The application required applicants to attach evidence of parentage. Three options were available: a certified copy of a court decree, an acknowledgment of paternity, and a "certified copy of the BIOLOGICAL parents' marriage license." Bradley and Tara chose the "BIOLOGICAL parents' marriage license" as their evidence of parentage.

[¶6.] Bradley and Tara signed the application and had it notarized. Printed language immediately below Bradley's signature indicated that the person signing the application was the "FATHER or Legal Guardian swearing to this affidavit." A warning on the application, directly above Bradley's signature, stated: "[t]he [p]enalty for knowingly making a false statement in this form can be 2-10 years in prison and a fine of up to $10,000." Although Bradley knew he was not Taiton's biological father, he testified that by executing the application, he thought he was going to become Taiton's father.

[¶7.] The parties submitted the application to the Texas Department of State Health Services—Vital Statistics Unit. In March 2006, the Department issued an amended birth certificate naming Bradley as the father of "Taiton DeBoer." The parties later obtained a new social security card with Taiton's new name. During the marriage, Bradley also identified Taiton as his child on tax returns and health insurance documents. Bradley further held Taiton out as his child, rather than his stepchild, in some church and school activities.

[¶8.] Bradley filed for divorce in 2010. Tara counterclaimed for custody of Taiton and child support. Bradley and Tara stipulated to all matters other than child support.

[¶9.] At trial, the parties primarily focused on whether the birth certificate, by itself, created a presumption of paternity. However, they also referenced Texas statutes creating a presumption of paternity. The circuit court ruled that Bradley "ha[d] no custody or visitation rights nor any support obligation for [Tara's] child, Taiton." The court concluded that no presumption of paternity arose under the birth certificate because it was fraudulently obtained and was null and void. The circuit court further concluded that even if there were a presumption of paternity under Texas law, the presumption was rebutted. The court finally concluded that no presumption arose under South Dakota law and that "adoption by estoppel" was not recognized in South Dakota.

[¶10.] On appeal, Tara argues that the circuit court: (1) erred in concluding Bradley was not Taiton's presumed father under Texas Family Code Annotated Sections 160.204 and 160.607; (2) erred in concluding Bradley was not Taiton's presumed father under SDCL 25-8-52 and 25-8-59; and (3) erred in concluding Bradley did not adopt Taiton by estoppel. Because the first issue is dispositive, we do not discuss issues (2) and (3).[1]

---

1. Tara does not pursue her trial argument that the birth certificate established a presumption of paternity.

*Decision*

[¶11.]    The question we address is whether two Texas statutes created an unrebutted presumption of paternity.[2]  The material facts are not in dispute and "the question requires us to consider legal concepts in the mix of fact and law . . . to exercise judgment about the values that animate legal principles[.]"  *See Manuel v. Toner Plus, Inc.*, 2012 S.D. 47, ¶ 8, 815 N.W.2d 668, 670.  This is a question of law that we review de novo.  *See id.*

[¶12.]    Texas Family Code Annotated Section 160.204 creates a presumption of paternity under certain circumstances when parties marry after the birth of a child.  That statute provides:

> (a) A man is presumed to be the father of a child if . . . (4) he married the mother of the child after the birth of the child in apparent compliance with law, regardless of whether the marriage is or could be declared invalid, he voluntarily asserted his paternity of the child, and: (A) the assertion is in a record filed with the bureau of vital statistics; [or] (B) he is voluntarily named as the child's father on the child's birth certificate . . . .

Tex. Fam. Code Ann. § 160.204 (West 2003).

[¶13.]    There is no dispute that Bradley married Tara after the birth of Taiton.  Therefore, the first requirement of the statute was satisfied.

[¶14.]    The second requirement is that Bradley must have voluntarily asserted paternity.  The circuit court acknowledged that Bradley swore under oath that he was Taiton's biological parent on the application for an amended birth

---

2.    In referencing the applicable law, both parties rely on Texas statutes.  We decide this case under the arguments presented.  We express no opinion regarding the appropriate choice of law.

certificate. But the court concluded the application was not a voluntary assertion of paternity because "there [was] no dispute that Brad [was] not the biological father of Taiton." The court also reasoned that Bradley's signature on the application did not equate to a formal "Acknowledgement of Paternity." The court finally reasoned that Bradley never "specifically assert[ed] that he [was] the father, other than the language printed under his signature line."

[¶15.] The circuit court erred in applying the Texas statute. First, there is no requirement in Section 160.204(a)(4) that the putative father be the biological father in order to have asserted paternity. Second, the statute does not require a formal "Acknowledgement of Paternity." The statute only requires that the putative father "voluntarily assert[] his paternity of the child" in an undefined manner. *See* Tex. Fam. Code Ann. § 160.204. Finally, Bradley did specifically assert that he was Taiton's father. Bradley testified that he read the entire application, including the penalty for perjury; and he signed the document and had it notarized. In that document, Bradley asserted that he was Taiton's "biological parent[ ]." He also asserted that he was Taiton's "FATHER." By his signature and acknowledgment, Bradley voluntarily asserted paternity.

[¶16.] The final requirement is that the assertion of paternity be "in a record filed with the bureau of vital statistics" or that "[the father was] voluntarily named as the child's father on the child's birth certificate." Tex. Fam. Code Ann. § 160.204(a)(4)(A)-(B). The circuit court apparently considered these alternatives together. The court concluded that neither requirement was met because Taiton's

amended birth certificate was null and void as Tara and Bradley obtained it by fraudulently executing the application.[3] However, the Texas presumption statute did not require a valid birth certificate. The statute only required that an "assertion" of a paternity be filed with the bureau of vital statistics or that the putative father be voluntarily named on a birth certificate.

[¶17.] In this case, the last two requirements were satisfied. Bradley's application contained an assertion that he was Taiton's biological father, and the application was filed with the Texas Department of State Health Services—Vital Statistics Unit. Alternatively, there is no dispute that Bradley voluntarily allowed his name to be placed on Taiton's birth certificate. Because both requirements were satisfied, a rebuttable presumption of paternity arose.

---

3. The circuit court indicated that there was no Texas case law determining whether a fraudulently obtained birth certificate was void. The court relied on other courts that have voided fraudulently executed paternity acknowledgments and paternity affidavits. Because this case involves a mere assertion of paternity rather than a formal paternity acknowledgement, paternity affidavit, or birth certificate, we find the circuit court's authorities inapposite.

    The circuit court also erred in relying on *Crouse v. Crouse*, 1996 S.D. 95, 552 N.W.2d 413, to conclude that Bradley's false assertion of paternity to obtain Taiton's amended birth certificate could not create a presumption of paternity. In *Crouse*, this Court stated that, under Iowa law, "a false acknowledgment of fatherhood on a birth certificate will not *establish paternity* . . . ." *Id.* ¶ 12 (emphasis added). The question in *Crouse* was "whether placing the husband's name on the non-biological child's birth certificate afforded the husband parental rights to custody . . ."; it "did not involve a presumption of paternity." *State ex rel. Wernke v. Cortez*, 2010 S.D. 47, ¶ 5, 783 N.W.2d 852, 854. We have previously concluded that *Crouse* does not apply to cases involving presumptions of paternity and resulting obligations for child support. *See Cortez*, 2010 S.D. 47, ¶¶ 5-6, 783 N.W.2d at 854.

[¶18.]    Bradley claims that any presumption was rebutted under Texas Family Code Annotated Section 160.607(b). That statute provided,

> A proceeding seeking to disprove the father-child relationship between a child and the child's presumed father may be maintained at any time if the court determines that: (1) the presumed father and the mother of the child did not live together or engage in sexual intercourse with each other during the probable time of conception; and (2) the presumed father never represented to others that the child was his own.

Tex. Fam. Code Ann. § 160.607(b) (West 2003) (amended 2011).

[¶19.]    The circuit court ruled that Bradley overcame the "presumption [of paternity] through the testimony of the parties that he [was] not the biological father of Taiton and the lack of evidence indicating Brad[ley] represented to others that Taiton was his own child." Bradley, however, executed a will stating that "Taiton DeBoer" was his child. Bradley also made representations inferring paternity on health insurance documents and income tax returns. Bradley further held Taiton out as his child, rather than his stepchild, in school and church activities. Bradley and Tara also obtained a new social security card that identified Taiton as "Taiton DeBoer" even though they had not pursued a change of name or adoption proceeding. This record does not support the circuit court's determination that Bradley "never represented to others that the child was his own." *See* Tex. Fam. Code Ann. § 160.607(b). The circuit court clearly erred in finding Bradley never represented that Taiton was his child. Therefore, the presumption of paternity was not rebutted.

[¶20.] Although Bradley is not Taiton's biological father, Bradley became Taiton's "parent" for purposes of child support. A "parent" is "an individual who has established a parent-child relationship under Section 160.201." Tex. Fam. Code Ann. § 160.102(11) (West 2003). An unrebutted presumption of paternity establishes a parent-child relationship. Tex. Fam. Code Ann. § 160.201(b) (West 2003) (providing circumstances that establish a parent-child relationship). That parent-child relationship imposes a duty on the parent to support the child. *See* Tex. Fam. Code Ann. § 151.001(a)(3) (West 2003) (providing that a parent has the duty to support his or her child); Tex. Fam. Code Ann. § 160.203 (West 2003) ("Unless parental rights are terminated, a parent-child relationship . . . applies for all purposes, except as otherwise provided by another law of this state."); *Mata v. Moreno*, 601 S.W.2d 58, 59 (Tex. Civ. App. 1980) (stating that "a court [may] order an individual to pay child support only if it determines that a parent-child relationship exists").

[¶21.] "Paternity presumptions are driven not by biological paternity, but by the state's interest in the welfare of the child and the integrity of the family." *In re T.R.*, 34 Cal. Rptr. 3d 215, 219 (Cal. Ct. App. 2005). Under Texas law, a parent may be required to support a non-biological child if a parent-child relationship is established. *See In re Rodriguez*, 248 S.W.3d 444, 452, 454 (Tex. App. 2008) (concluding that the Texas Legislature specifically limited paternity challenges "to protect the family unit" and thus, DNA evidence allegedly disproving a father-child relationship is not always admissible); *In re J.I.Z.*, 170 S.W.3d 881, 883-84 (Tex.

App. 2005) (stating that modification of a child support decree is not permissible merely because post-decree DNA evidence indicates the obligor—who was previously determined to be the legal father—is not the biological father).

[¶22.]     This Court has also recognized that a presumption of paternity may require a parent to support a non-biological child. *State ex rel. Wernke v. Cortez,* 2010 S.D. 47, ¶¶ 2, 6, 783 N.W.2d 852, 853-54.  In *Cortez*, Jorge Cortez knew he was not the child's biological father.  *Id.* ¶ 2.  Yet, Cortez signed a paternity affidavit and acknowledged he was the natural father of the child.  *Id.*  Because a presumption of paternity arose, Cortez was legally obligated to support the child.  *Id.* ¶ 6.

[¶23.]     Here, Bradley was not Taiton's biological father.  But Bradley voluntarily asserted paternity in a manner that created a rebuttable presumption of paternity under Texas law.  Because the presumption was not rebutted, Bradley is legally obligated to support Taiton.

[¶24.]      Reversed and remanded for further proceedings on Tara's claim for child support.

[¶25.]     GILBERTSON, Chief Justice, and KONENKAMP, SEVERSON, and WILBUR, Justices, concur.