

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-25-00570-CV

**IN RE E.R.F.**

Original Mandamus Proceeding[1]

Opinion by:    Lori Massey Brissette, Justice

Sitting:        Irene Rios, Justice
               Lori I. Valenzuela, Justice
               Lori Massey Brissette, Justice

Delivered and Filed: January 28, 2026

PETITION FOR WRIT OF MANDAMUS CONDITIONALLY GRANTED; STAY LIFTED

In this case, the trial court entered temporary orders requiring a child to move from his father in Texas to his mother in Wisconsin based on the trial court's finding that the father had not yet been determined to be the parent of the child at issue. Because the trial court erred in that regard, as the father's rights have been established, we conditionally grant the petition for writ of mandamus.

## I.    BACKGROUND

On March 18, 2025, relator filed a petition to adjudicate the parentage of D.I.F. The real party in interest is D.I.F.'s biological mother ("Mother"). Mother filed a motion for temporary

---

[1] This proceeding arises out of Cause No. 2025CI06073, styled *In the Interest of D.I.F., a Child*, pending in the 45th Judicial District Court, Bexar County, Texas, the Honorable Mary Lou Alvarez presiding.

orders on August 7, 2025. The trial court held a hearing on that motion on September 10, 2025, where it took testimony from Mother, relator, and relator's sister. The court also entered several exhibits produced by relator, including D.I.F.'s birth certificate and an acknowledgement of paternity endorsed by both Mother and relator. Both the birth certificate and the acknowledgement of paternity list relator as D.I.F.'s father.

According to Mother's testimony, she, D.I.F., and her other two children lived with relator from 2019 through March of 2025. Following an argument with relator in March of 2025, Mother decided to move with her children to live with other family members in Wisconsin. Mother packed the children in a car and began driving without notifying the relator that she had taken D.I.F. or where she was going. Relator discovered that Mother had absconded with D.I.F. and located them at a motel in Oklahoma. Relator removed D.I.F. from Mother's vehicle over her protests then returned to San Antonio with the child. Mother carried on to Wisconsin with her other children. D.I.F. has continued to reside with relator ever since.

Mother testified that relator is not the biological father of D.I.F. and claims to have told him so while the couple were separated in 2019.[2] But, she also advised the court that relator was the only father D.I.F. had ever known and that he was a good father. Mother claimed to have minimal contact with D.I.F. since moving to Wisconsin and explained that it was difficult for her to travel to Texas because she was on probation for theft in Wisconsin. Mother did not describe any plans for D.I.F.'s education, healthcare, support systems, or likely living arrangements if he were to be relocated to Wisconsin.

Relator testified that D.I.F. had lived with him his entire life and that he believed himself to be D.I.F.'s biological father until recently, when he obtained results of a DNA test that was

---

[2] It is unclear when in 2019 Mother allegedly told relator that he was not the biological father. D.I.F. was born in mid-December 2019 and the acknowledgement of paternity was signed the day after D.I.F.'s birth in mid-December 2019.

ordered by the trial court after and despite the fact that relator had non-suited his petition to adjudicate parentage. According to relator, he had been the person responsible for taking D.I.F. to doctor's appointments, wellness checkups, and medical exams, and he provides D.I.F.'s health insurance. In addition to providing for D.I.F.'s healthcare, relator made arrangements for D.I.F.'s autism and speech delay treatments. He indicated that he was the only parent to make arrangements for, and take D.I.F. to, these appointments. He expressed concerns for Mother's ability to care for D.I.F., described her as unreliable, and alleged that she had previously threatened to harm herself. According to relator, Mother paid little attention to her children.

Relator's sister also testified to corroborate much of relator's account. She described Mother as being inattentive, going so far as to curse at and push her children away when they sought attention. She further testified regarding several alleged instances where Mother threatened to harm herself and her children. She characterized relator as a very good parent who was responsible for D.I.F.'s health, education, and other needs.

Following the close of evidence, respondent discussed administrative matters with counsel before noting that the case was non-suited on June 27, 2025.[3] Mother's counsel advised respondent that the case remained live because Mother had filed a motion for genetic testing prior to relator's non-suit. Relator's counsel advised that she had raised the non-suit issue at a prior hearing and that the judge held that because the motion for genetic testing pre-dated the non-suit, the parties were

---

[3] The hearing transcript suggests that the trial court may have abused its discretion by issuing an order in a case that relator had non-suited, first in ordering genetic testing after the non-suit was entered and then in setting temporary orders of possession and access despite the fact that no standing pleading remained. *See Walker Sand, Inc. v. Baytown Asphalt Materials, Ltd.*, 95 S.W.3d 511, 514 (Tex. App.–Houston [1st Dist.] 2002, no pet.) ("Appellate courts must determine, even *sua sponte*, the question of jurisdiction, and the lack of jurisdiction may not be ignored simply because the parties do not raise the issue.") *Interest of J.J.R.S.*, 627 S.W.3d 211, 225 (Tex. 2021). When the court determines that an opinion is void, it is not to consider the merits. Tex. Mut. Ins. Co. v. Laird, 706 S.W.3d 421, 423 (Tex. App.—Austin 2024, no pet.) ("[A] court of appeals faced with a void judgment has no jurisdiction to consider the merits of the appeal."). However, other than statements by counsel during the hearing, we are not presented with an adequate record to conclusively determine that the underlying order is void and thus proceed to the merits.

required to proceed with the matter. Relator's counsel claimed that Mother had not filed a counterpetition prior to the non-suit. Mother's counsel did not contradict this assertion.

Respondent then proceeded to set the case for a final trial to adjudicate D.I.F.'s parentage and ordered the child to be returned to his biological mother within two days of the hearing. Relator filed this petition for writ of mandamus and an emergency motion for stay the following day—September 11, 2025.[4]

## II.    DISCUSSION

### A.  MANDAMUS STANDARD

Mandamus relief is an extraordinary remedy and will issue only to correct a clear abuse of discretion when there is no adequate remedy at law. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding).

A trial court abuses its discretion when it reaches a decision so arbitrary and unreasonable that it constitutes a clear and prejudicial error of law, or if it clearly fails to correctly analyze or apply the law. *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding); *Walker*, 827 S.W.2d at 840. A trial court has no discretion in determining what the law is or applying the law to the facts, even when the law is unsettled. *Prudential*, 148 S.W.3d at 135.

---

[4]Relator filed his petition for writ of mandamus and motion for emergency stay on September 11, 2025. We denied the motion for emergency stay without prejudice to refiling because relator did not furnish a copy of the order or any other evidence of its contents. Relator obtained a copy of the hearing transcript and filed a second motion for emergency stay, which we granted on September 15, 2025. The order granting the stay further ordered that the relator supplement the record with any order entered related to the petition for writ of mandamus within 48 hours of its entry and requested that the real party in interest and the respondent file their responses to the petition, if any, no later than October 6, 2025. Neither party has filed a response. The relator has supplemented the record with a copy of the signed and entered order.

The court must also determine whether the relator has an adequate remedy at law. *Walker*, 827 S.W.2d at 840. Mandamus is intended to be an extraordinary remedy, only available in limited circumstances "involving manifest and urgent necessity and not for grievances that may be addressed by other remedies." *Holloway v. Fifth Court of Appeals*, 767 S.W.2d 680, 684 (Tex. 1989). However, the adequacy of an appellate remedy is not determined by its mere availability, nor is it rendered inadequate because an appeal or other legal remedy is theoretically possible. *Prudential*, 148 S.W.3d 136–37. Instead, courts conduct a practical and prudential balancing of jurisprudential considerations weighing the benefits of mandamus review against its detriments. *Id.* at 136. Chief among these concerns are whether an alternative remedy can effectively protect the relator's rights, avoid irreparable harm, and prevent the waste of judicial and public resources. *Id.* An alternative remedy is not inadequate merely because the party may incur additional expense or delay. *Walker*, 827 S.W.2d at 842.

### B. LAW AND ANALYSIS

### i. *The father-child relationship between D.I.F. and relator has been conclusively established entitling relator to the same rights as Mother.*

The father-child relationship may be established by multiple means. TEX. FAM. CODE § 160.201(b). An adjudication of the man's paternity is not necessary if the man establishes the relationship by other enumerated means, including an unrebutted presumption of paternity or an effective acknowledgement of paternity that has not been rescinded. *See id.*; *see also* TEX. FAM. CODE §§ 160.204, 160.301 et seq. Unless terminated, the father-child relationship applies for all purposes unless another law of this state establishes otherwise. TEX. FAM. CODE § 160.203.

Here, relator is a presumed father under Texas Family Code section 160.204. *See also* TEX. FAM. CODE § 160.201(b)(1). He continuously resided in the household in which the child resided and he represented to others that the child was his own during the first two years of the child's life.

TEX. FAM. CODE § 160.204(a)(5). He has also established his rights as a father under Texas Family Code section 160.201(b)(2), since during the hearing relator introduced into evidence a facially valid acknowledgement of paternity executed by him and Mother, which Mother acknowledged to be authentic.[5] No evidence was entered that the acknowledgement had been rescinded or even that a rescission proceeding had been initiated.

Thus, despite relator's non-suiting of the petition to adjudicate parentage, which was wholly unnecessary given his status as described above, relator remained vested with the same parental rights as Mother with regard to the child. *See* TEX. FAM. CODE §§ 160.203, 160.305(a).

### ii.        *Respondent incorrectly assumed that relator did not possess parental rights in ordering D.I.F. to be "returned" to Mother.*

It is clear from the record that respondent ordered the child to be sent to Mother in Wisconsin based on respondent's belief that relator had not established his parental rights, as set forth in this passage from the hearing:

> THE COURT: Okay. Then on the pleadings, the final trial is set for 11/13/2025 at 9:00 a.m., out of the Bexar County Presiding Court, room 109. That is the trial to determine the parentage of this child and in the absence of that determination, this child needs to go back to the biological mother.

> MS. POTTER: So, Your Honor, even though the case is (indiscernible) nonsuited we are still having a final hearing on that case that has been nonsuited.

> THE COURT: If you don't want the final trial then drop it, but this child needs to go back to his mother. **There's an open question as to the paternity that you haven't gotten a final determination on that**. I don't know why you nonsuited the case to get that determination, but I don't see how the nonsuit was proper if there was a request for relief from the other side that had not yet been resolved. I mean, at—at this point just going through the pleadings from the date of filing 3/18/25, to today, I—**I imagine the next step would be for mom to file a motion to dismiss your claims to parentage** and—and go from there.

---

[5] Section 160.304 of the Texas Family Code provides that an acknowledgement of paternity becomes effective on the date of the birth of the child or the filing of the document with the vital statistics unit, whichever occurs later. TEX. FAM. CODE § 160.304(c). "[A] valid acknowledgment of paternity filed with the vital statistics unit is the equivalent of an adjudication of the paternity of a child and confers on the acknowledged father all rights and duties of a parent" unless the acknowledgement has been rescinded under section 160.307 or 160.308. *Id.* at § 160.305(a).

But, as discussed *supra*, relator's parental rights have been established and he need not obtain an adjudication of parentage to maintain those rights. *See* TEX. FAM. CODE § 160.203 ("Unless parental rights are terminated, a parent-child relationship established under this chapter applies for all purposes, except as otherwise provided by another law of this state."); *see also DeBoer v. DeBoer*, 2012 S.D. 74, 21, 822 N.W.2d 730, 735 ("Paternity presumptions are driven not by biological paternity, but by the state's interest in the welfare of the child and the integrity of the family.") (quoting *In re T.R.*, 132 Cal. App. 4th 1202, 34 Cal. Rptr. 3d 215, 219 (2005)); *In re Rodriguez*, 248 S.W.3d 444, 454 (Tex. App.—Dallas 2008, orig. proceeding) (finding no adequate remedy by appeal for purposes of mandamus relief when trial court ordered genetic testing be done after the limitations period for an adjudication of parentage had expired because "[o]nce genetic testing is conducted and the results released for use in a proceeding to determine parentage, any harm resulting cannot be undone.").

### iii. *Relator lacks an adequate remedy at law.*

Temporary custody orders are interlocutory and there is no provision for the appeal of these orders. *See Dancy v. Daggett*, 815 S.W.2d 548, 548 (Tex. 1991); *In re Lemons*, 47 S.W.3d 202, 203–04 (Tex. App.—Beaumont 2001, orig. proceeding). The Texas Supreme Court "recognizes that a parent's interest in maintaining custody of and raising his or her child is paramount." *In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). This right has been described as a fundamental liberty interest. *Id.* at 548. It extends to both the parent and the child. *Id.* at 547.

The contested order required relator to relinquish custody of D.I.F., relator's legal child, and it further deprived D.I.F. of the only home he had known and access to his existing educational and medical providers, including his speech therapy and autism treatment. Under these circumstances, it is clear that relator lacked an adequate remedy at law.

## C. Conclusion

Because the trial court abused its discretion, we conditionally grant relator's petition for writ of mandamus and we direct the trial court to vacate the September 10, 2025 oral orders requiring that D.I.F. be returned to his biological mother within two days. This writ will issue only if the trial court fails to comply.

Lori Massey Brissette, Justice